1  Mitchell F. Boomer (State Bar No. 121441)
   Janine R. Hudson (State Bar No. 206671)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401

5  Attorneys for Defendant
   PFIZER, INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  RANDALL J. SLOAN, an individual,          Case No. CV-08-1849 BZ

12              Plaintiff,
                                              **DEFENDANT PFIZER, INC.'S**
13      vs.                                   **REQUEST FOR JUDICIAL NOTICE**
                                              **IN SUPPORT OF MOTION TO**
14  PFIZER, INC., a Delaware corporation; and **TRANSFER VENUE**
    DOES 1 through 40, inclusive,
15                                            Date:   July 16, 2008
                                              Time:   10:00 a.m.
16              Defendants.                   Ctrm.:  G, 15th Floor
                                              MJ:     Hon. Bernard Zimmerman
17
                                              Complaint Filed:   12/11/2007
18                                            Case Removed to Federal Court: 4/7/2008

19

20  **TO PLAINTIFF AND HIS ATTORNEY OF RECORDS:**

21          PLEASE TAKE NOTICE that on July 16, 2008 at 10:00 a.m. in Courtroom G of the

22  United States District Court – Northern District of California, at 450 Golden Gate Avenue, 15th

23  Floor, San Francisco, California, Defendant PFIZER, INC. ("Pfizer"), by and through its attorney

24  of record, hereby respectfully requests that the Court take judicial notice pursuant to Federal Rule

25  of Evidence Rule 201 of the following documents in support of its Motion to Transfer Venue.

26          1.      A true and correct copy of Plaintiff's complaint filed on December 11, 2007 in San

27                  Francisco County Superior Court as *Randall J. Sloan v. Pfizer, Inc.,* Case No.

28                  CGC -07-469930 is attached hereto as **Exhibit "A."**

                                              1

2.    Attached hereto as **Exhibit "B"** is a true and correct copy of the opinion issued by this Court in *Biswas v. HR Value Group, LLC,* 2002 U.S. Dist. LEXIS 19164 (N.D. Cal. 2002).

3.    Attached hereto as **Exhibit "C"** is a true and correct copy of the opinion issued by this Court in *Jarvis v. Marietta Corporation,* 1999 U.S. Dist. LEXIS 12659 (N.D. Cal. 1999).

4.    Attached hereto as **Exhibit "D"** is a true and correct copy of the opinion issued by this Court in *Teknekron Software Systems, Inc. v. Cornell Univ.,* 1993 U.S. Dist. LEXIS 21337 (N.D. Cal. 1993).

Dated:  June 5, 2008                              Respectfully submitted,

                                                 JACKSON LEWIS LLP


                                    By:    ___/s/ Janine R. Hudson_____
                                           Mitchell F. Boomer
                                           Janine R. Hudson
                                           Attorneys for Defendant
                                           PFIZER, INC.

2

# EXHIBIT A

1  **Daniel P. Iannitelli - 203388**
   **Bryan L. Saalfeld - 243331**
2  FOTOUHI • EPPS • HILLGER • GILROY LLP
   160 Pine Street, Suite 710
3  San Francisco, CA 94111
   Tel: 415.362.9300
4  Fax: 415.358.5521

5
   Attorneys for Plaintiffs
6  RANDALL J. SLOAN

7

SUMMONS ISSUED

# FILED

San Francisco County Superior Court

DEC 11 2007

GORDON PARK-LI, Clerk

BY: _____
                Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION

10  RANDALL J. SLOAN, an individual,           )   Case No. **CGC-07-469930**
                                               )
11              Plaintiff,                     )   **COMPLAINT FOR DAMAGES**
                                               )
12  vs.                                        )   CASE MANAGEMENT CONFERENCE SET
                                               )
13  PFIZER, INC., a Delaware corporation; and  )
    DOES 1 through 40, inclusive,              )   MAY  0 9 2008  -9:00 AM
14                                             )
                Defendants.                    )   DEPARTMENT 212
15  _____)

16          COMES NOW Plaintiff and files this Complaint against Defendants on behalf of himself, and

17  in support thereof alleges the following:

18                                  **PARTIES**

19  1.      Plaintiff RANDALL SLOAN (hereinafter referred to as "Plaintiff") is an individual and a

20  resident of the State of California.

21  2.      Plaintiff is informed, and thereon alleges, that defendant PFIZER, INC., is a Delaware

22  corporation, and is authorized to transact business in the State of California.

23  3.      Plaintiff does not know the true names and capacities of defendants designated as

24  Does 1 through 40 inclusive, whether individual, corporate, associate or otherwise, and therefore

25  sues said defendants by such fictitious names pursuant to the California Code of Civil Procedure.

26  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants

27  is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries as

28  herein alleged were proximately caused by their wrongful conduct.  Plaintiff will amend its Complaint

**EXHIBIT A**

1    when the true names and capacities of said defendants are revealed or become known.

2    4.    Plaintiff is informed and believes and thereon allege that at all times mentioned in

3    this Complaint, each of the defendants, whether specifically named or designated as a Doe, was the

4    agent, servant, employee or officer of the other, and all acts alleged to have been committed by one

5    of them was committed by and on behalf of every other and in doing the acts herein alleged, was

6    acting within the course and scope of said agency, employment and service with the advance

7    knowledge, consent and ratification of the remaining defendants.

8    5.    Venue is appropriate because defendant PFIZER, INC., is authorized to transact business in

9    the State of California and transacts business in the City and County of San Francisco.  Plaintiff is a

10    resident of State of California, City and County of San Francisco.

11    **STATEMENT OF FACTS**

12    6.    From on or about October 1, 2001, to on or about January 8, 2007, Plaintiff was employed

13    by Defendant PFIZER, INC, as an Associate, in the Clinical Developmental Group.

14    7.    At times herein mentioned, Plaintiff was a individual protected, on the basis of his sexual

15    orientation, gender, mental disability and physical disability, under Cal. Govt. Code §12940(a).

16    8.    Since the inception of his employment with Defendants, Plaintiff was openly Gay and this fact

17    was understood by Plaintiff's employer, supervisors and co-workers.  Throughout his employment,

18    Plaintiff worked tirelessly to perform beyond expectations and to develop professionally within the

19    company.  In addition to his achievements at his position, Plaintiff actively sought mentoring and

20    training opportunities as outlined in defendant PFIZER, INC.'s policies.  Plaintiff also sought

21    promotions for which he was qualified.

22    9.    Despite Plaintiff's excellence in the performance of his duties and efforts to grow

23    professionally, Defendants, on the basis of his sexual orientation and gender, refused to approve

24    Plaintiff's efforts to seek mentoring through its Open Door Policy and to seek guidance in his

25    development.  Plaintiff was also denied promotions on the basis of his sexual orientation and gender.

26    Within Plaintiff's team, he was the only male and only non-heterosexual.  Plaintiff's heterosexual

27    female co-workers received mentoring, training opportunities, higher performance reviews, higher

28    compensation and better treatment as employees.   Plaintiff complained about the unfair and

1   discriminatory conduct to his immediate supervisor. Defendants' conduct in refusing to assist Plaintiff

2   in his professional development, per PFIZER, INC.'s policies, and refusal to promote Plaintiff, was on

3   the basis of his sexual orientation and gender, and for opposing Defendants' discriminatory actions.

4   10.    In or around November 2004, Plaintiff began making formal complaints to the Human

5   Resources department about the discrimination and retaliation he was enduring. Plaintiff also

6   continued to address his concerns to, and demand from, his immediate supervisor that he be treated

7   fairly under the law, as well as PFIZER, INC.'s anti-discrimination and retaliation polices. Plaintiff's

8   complaints to Human Resources were not investigated and no action was taken to prevent further

9   discrimination.

10   11.    In or around May 2005, Plaintiff was diagnosed with human immunodeficiency virus (HIV).

11   Shortly thereafter, Plaintiff was also diagnosed with mental disabilities.

12   12.    In or around July 2005, pursuant to Plaintiff's physicians recommendations and orders,

13   Plaintiff requested from Defendants that he be provided an accommodation of being able to work

14   from home (telecommute), or that some other reasonable accommodation be made. Defendants

15   denied Plaintiff's request despite the fact that one of his co-workers, a heterosexual female, was

16   permitted to telecommute from another state for six (6) months simply to facilitate the preparations of

17   her wedding.

18   13.    Plaintiff made repeated requests for a reasonable accommodation which were denied by

19   Defendants. Instead, PFIZER, INC. insisted that Plaintiff apply for Short Term Disability (STD) under its

20   STD Plan, which Plaintiff reluctantly agreed to do. Acting unreasonable in administering his

21   application, PFIZER, INC.'s conduct resulted in needless delay in obtaining benefits which were

22   provided only after Plaintiff's extensive efforts.

23   14.    Without adequate warning and a reasonable basis, Defendants cancelled Plaintiff's STD

24   benefits and ordered him to return to work on December 12, 2006. Defendants did so in violation of

25   its own policies and applicable law. This unexpected demand occurred a few days after Plaintiff

26   inquired about PFIZER, INC.'s polices regarding gender reassignment and further communications

27   with human resources regarding prior complaints of, and ongoing, discrimination and retaliation.

28   //

15.    On December 12, 2006, Plaintiff returned to work from his interrupted disability leave, performing his duties by telecommuting.

16.    On or about February 1, 2006, due to his physical disabilities, Plaintiff was again placed on STD and was on medical leave until August 1, 2006. As a result of continued disabilities, plaintiff requested further extension of his STD as permitted by PFIZER, INC.'s policies, as well as placement in other positions within the company for which Plaintiff was qualified. PFIZER refused such accommodations and terminated Plaintiff.

## FIRST CAUSE OF ACTION

### (Physical and Mental Disability Discrimination)

17.    Plaintiff realleges paragraphs 1 through 16, inclusive, of this Complaint and incorporates them herein by reference.

18.    Plaintiff suffers from physical and mental disabilities, as diagnosed by medical physicians and acknowledged by Defendants, and is therefore a member of the class of persons protected from mental and physical disability discrimination under California Government Code section 12940 et seq.

19.    Defendants regularly employ five or more persons and therefore are employers subject to regulation by California Government Code §12940.

20.    Defendants refused to make reasonable accommodations for Plaintiff's known mental and physical disabilities by terminating Plaintiff because, in part, he was placed on medical-mental disability leave by his physician. Despite Plaintiff's repeated requests, Defendants failed to engage in an interactive process to find a reasonable accommodation.

21.    Defendants unlawfully subjected Plaintiff to adverse employment actions by, among other things, harassing Plaintiff, retaliating against Plaintiff, treating Plaintiff differently than other similarly situated employees, because of his disability.

22.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff's employment was terminated by Defendants because of his physical and mental disability, in violation of California Government Code §12940 et seq.

23.    Within one-year from the date of the most recent act of discrimination, Plaintiff filed a

charge of physical and mental disability discrimination, and other violations including gender and sexual orientation discrimination, with the California Department of Fair Employment and Housing. On or about December 12, 2006, Plaintiff received a right to sue notice from the California Department of Fair Employment and Housing and subsequently amended. *A true and correct copy of the DFEH Right to Sue letter is attached hereto as Exhibit A.*

24.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits.

27.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer severe and serious injury to his person, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

26.    The conduct of Defendants in discriminating against Plaintiff and terminating him because of his disabilities subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Plaintiff is informed and believes, and thereon alleges, that his termination by Defendants, and each of them, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

## SECOND CAUSE OF ACTION

## (Gender and Sexual Orientation Discrimination)

27.    Plaintiff realleges paragraphs 1 through 26, inclusive, of this Complaint and incorporates them herein by reference.

28.    Plaintiff is a Gay male and is therefore a member of the classes of persons protected from gender, sexual orientation and gender assignment discrimination under California Government Code section 12940 et seq.

29.    Defendants discriminated against Plaintiff, on the basis of his sexual orientation and gender, by failing to provide the same employment benefits offered to other similarly situated, straight females, including not receiving mentoring, training opportunities, higher performance reviews, higher compensation, exclusion from proximity to management, promotions and fair treatment.

30.   Defendants discriminated against Plaintiff, on the basis of his sexual orientation and gender, by not offering him the same opportunities as other co-workers and by refusing to reassign plaintiff to another position within the company and by terminating him.

31.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits.

32.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer severe and serious injury to his person, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

33.   The conduct of Defendants in discriminating against Plaintiff and terminating him because of his disability subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Plaintiff is informed and believes, and thereon alleges, that his termination by Defendants, and each of them, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

## THIRD CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

34.   Plaintiff realleges paragraphs 1 through 33, inclusive, of this Complaint and incorporates them herein by reference.

35.   Plaintiff is informed and believes, and thereon alleges, that Plaintiff's employment was terminated by Defendants because of, among other things, his physical and mental disabilities, in violation of California Government Code §12940 et seq.

36.   Plaintiff is informed and believes, and thereon alleges, Plaintiff's employment was also terminated by Defendants because of his sexual orientation, gender and exploration of gender reassignment in violation of California Government Code §12940 et seq.

37.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits.

38.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer severe and serious injury to his person, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

39.    As a direct and proximate result of the misconduct and unlawfulness of Defendants, and each of them, and the resulting termination of Plaintiff's employment, Plaintiff has suffered harm including, but not limited to, humiliation, embarrassment, and mental anguish, all to Plaintiff's damage to be shown according to proof.

41.    The conduct of Defendants in discriminating against Plaintiff, terminating him because of his disability, and to deny him benefits, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.  Plaintiff is informed and believes, and thereon alleges, that his termination by Defendants, and each of them, was done with an intent to cause injury to Plaintiff.  As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

## FOURTH CAUSE OF ACTION

### (Retaliation)

42.    Plaintiff realleges paragraphs 1 through 41, inclusive, of this Complaint and incorporates them herein by reference.

43.    Plaintiff is informed and believes, and thereon alleges, that the adverse employment actions taken against him by Defendants as set forth herein occurred in retaliation for being on disability leave, asserting his rights as Gay individual and a disabled individual, as well as Plaintiff's complaints of unlawful discriminatory treatment, harassment and adverse treatment in his employment with Defendants.  Such actions are unlawful, discriminatory and retaliatory in violation of Government Code section 12940 et seq. and have resulted in damages to Plaintiff.

44.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits.

45.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and

1  continues to suffer severe and serious injury to his person, all to Plaintiff's damage in a sum within

2  the jurisdiction of this Court and to be shown according to proof.

3  46.     As a direct and proximate result of the misconduct and unlawfulness of Defendants, and

4  each of them, and the resulting termination of Plaintiff's employment, Plaintiff has suffered harm

5  including, but not limited to, humiliation, embarrassment, and mental anguish, all to Plaintiff's

6  damage to be shown according to proof.

7  47.     The conduct of Defendants in discriminating against Plaintiff and retaliating against him

8  because of his disability subjected Plaintiff to cruel and unjust hardship in conscious disregard of

9  Plaintiff's rights.  Plaintiff is informed and believes, and thereon alleges, that his termination by

10  Defendants, and each of them, was done with an intent to cause injury to Plaintiff.  As a

11  consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to

12  an award of punitive damages in a sum to be shown according to proof.

13  **FIFTH CAUSE OF ACTION**

14  **(Breach of the Covenant of Good Faith and Fair Dealing)**

15  48.     Plaintiff realleges paragraphs 1 through 47, inclusive, of this Complaint and incorporates

16  them herein by reference.

17  49.     The employment agreement referred to above contained an implied covenant of good faith

18  and fair dealing, which obligated Defendants to perform the terms and conditions of the agreement

19  fairly and in good faith and refrain from doing any act that would prevent or impede Plaintiff from

20  performing any and all of the conditions of the contract that he agreed to perform, or any act that

21  would deprive Plaintiff of the benefits of the contract.

22  50.     Plaintiff performed all the duties and conditions of the employment agreement.

23  51.     Defendants knew that Plaintiff had fulfilled his duties and conditions under the agreement.

24  52.     Defendants breached the implied covenant of good faith and fair dealing under the

25  employment agreement by causing Plaintiff's termination intentionally, in bad faith and for reasons

26  extraneous to the agreement.  Plaintiff is informed and believes, and thereon alleges, that

27  Defendants terminated Plaintiff without good, just or legitimate cause.  Plaintiff is informed and

28  believes and thereon alleges that Defendants terminated him because, among other things, of his

gender, sexual orientation, disabilities and complaints regarding adverse employment actions.

53.    As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer, losses in earnings and other employment benefits, and consequential economic damages to his damage in an amount to be shown according to proof.

## SIXTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

54.    Plaintiff realleges paragraphs 1 through 53, inclusive, of this Complaint and incorporates them herein by reference.

55.    Plaintiff is informed and believes, and thereon alleges, that the actions of Defendants, and each of them, discriminated against Plaintiff, harassed Plaintiff, retaliated against Plaintiff, and engaged in other misconduct against Plaintiff because of his gender, sexual orientation, disability, and causing Plaintiff's employment to be terminated in contravention of public policy, as aforesaid, was intentional, extreme, outrageous and done with the intent to cause emotional distress or with reckless disregard of the probability of causing Plaintiff such emotional distress.

56.    As a direct and proximate cause of the Defendants' conduct, Plaintiff has been subjected to severe emotional distress and will continue to suffer severe and permanent humiliation, mental pain and anguish, and will continue to live in a constant state of emotional tension and distress.

57.    As a direct and proximate result of Defendants, and each of their actions, Plaintiff has suffered severe and serious injury to his person, all to Plaintiff's damage in a sum within he jurisdiction of this Court and not be shown according to proof.

58.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his capacity to earn his salary, and has lost and will continue to lose employment benefits.

59.    The conduct of Defendants in discriminating against Plaintiff because of his disability subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Plaintiff is informed and believes, and thereon alleges, that the termination of employment, retaliatory conduct, efforts to discontinue medical benefits and other conduct by Defendants, and each of them, was

1  done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive,

2  malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to

3  be shown according to proof.

4  **SEVENTH CAUSE OF ACTION**

5  **(Negligent Infliction of Emotional Distress)**

6  60.    Plaintiff realleges paragraphs 1 through 59, inclusive, of this Complaint and incorporates

7  them herein by reference.

8  61.    Plaintiff is informed and believes, and thereon alleges, that the actions of Defendants, and

9  each of them, were done with reckless disregard of the probability of causing Plaintiff emotional

10  distress.

11  62.    As a direct and proximate cause of the Defendants' conduct, Plaintiff has been subjected

12  to severe emotional distress and will continue to suffer severe and permanent humiliation, mental

13  pain and anguish, and will continue to live in a constant state of emotional tension and distress.

14  63.    As a direct and proximate result of the Defendants', and each of their actions, Plaintiff has

15  suffered severe and serious injury to his person, all to Plaintiff's damage in a sum within he

16  jurisdiction of this Court and not be shown according to proof.

17  64.    As a direct and proximate result of the Defendants' conduct, plaintiff has suffered and

18  continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his

19  capacity to earn his salary, and has lost and will continue to lose employment benefits.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1    WHEREFORE, Plaintiff Randall J. Sloan prays for judgment against the Defendants, and each

2    of them, as follows:

3       1.    General damages in a sum according to proof;

4       2.    Special damages including loss of income and benefits;

5       3.    Punitive damages;

6       4.    For interest provided by law, including but not limited to, Civil Code §3291;

7       5.    For attorneys' fees in an amount to be shown according to proof;

8       6.    Costs of suit and for each other and further relief as the Court deems just and

9            proper.

10

11

12    Dated: December 11, 2007                    FOTOUHI • EPPS • HILLGER • GILROY LLP

13

14                                               By:

15                                                  Daniel P. Iannitelli
                                                    Attorney for Plaintiff
16                                                  Randall J. Sloan

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES        CY                                    ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



December 12, 2006

RANDALL J. SLOAN
563 Webster St. Apt F
San Francisco, CA 94117

RE:    E200607A0488-00-prsc
       SLOAN/PFIZER INC.

Dear RANDALL J. SLOAN:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective December 8, 2006 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

Herbert Yarbrough
District Administrator


cc:    Case File


Sherry Amos
Human Resources Generalist
CT CORPORATION
818 W. 7th Street
Los Angeles, CA  90017

DFEH-200-43 (06/06)

# EXHIBIT B

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19164    Page 1 of 7

Case 4:08-cv-01849-SBA    Document 6    Filed 06/05/2008    Page 19 of 45

2002 U.S. Dist. LEXIS 19164, *

BASHKER D. BISWAS, Plaintiff, v. HR VALUE GROUP, LLC, CUNA MUTUAL GROUP, CUNA MUTUAL INSURANCE SOCIETY; and Does 1 through 50 inclusive, Defendant.

No. C 02-03469 CRB

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2002 U.S. Dist. LEXIS 19164

October 3, 2002, Decided
October 4, 2002, Filed; October 4, 2002, Entered in Civil Docket

**DISPOSITION: [*1]** Defendants' motion to transfer granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a lawsuit that arose out of the termination of plaintiff employee's employment as chief executive officer of defendant employer, a corporation, the employer and defendant mutual group and mutual insurance society moved to transfer, to dismiss for lack of personal jurisdiction, to dismiss for improper venue, and to dismiss the mutual group.

**OVERVIEW:** The employer discharged the employee on the grounds that he did not satisfactorily perform his duties. The employee filed suit against defendants in California state court for breach of contract, wrongful termination, breach of implied covenant of good faith and fair dealing, violation of Cal. Lab. Code § 970, misrepresentation, employment discrimination, conversion, and interference with prospective economic advantage and contractual relations. Defendants removed the action on the basis of diversity jurisdiction. Defendants argued that transfer was proper because the witnesses and most of the evidence were located in Wisconsin, Illinois, and other eastern states and because Wisconsin's interest in the controversy outweighed that of California. The employee's choice of forum was granted substantial weight when deciding whether to transfer pursuant to 28 U.S.C.S. § 1404(a); however, defendants met their heavy burden to show that the convenience of the parties and witnesses and the interests of justice warranted transfer. The case was about the employee's employment with a Wisconsin corporation which occurred in Wisconsin and Illinois and as such should be litigated in Wisconsin.

**OUTCOME:** Defendants' motion to transfer was granted. Defendants' motions to dismiss for lack of personal jurisdiction and improper venue were dismissed as moot. Defendants' motion to dismiss the mutual group was dismissed without prejudice to being renewed before the transferee court.

**CORE TERMS:** personal jurisdiction, mutual, convenience, weighs, credit union, misrepresentation, interview, venue, transferring, reside, employment discrimination, breach of contract, wrongful termination, interest of justice, choice of forum, inconvenience, termination, terminated, subsidiary, leagues, substantial weight, heavy burden, conversion, relocate, place of business, human resource, conversion claim, intellectual property, consolidation, adjudicating

**EXHIBIT B**

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN1* See 28 U.S.C.S. § 1404(a).

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Venue > Motions to Transfer > Choice of Forum
*HN2* The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. A plaintiff's choice of forum is accorded substantial weight in proceedings under 28 U.S.C.S. § 1404(a). In order to meet its heavy burden to justify a transfer, the defendant must demonstrate that the following factors strongly favor venue in the transferring district: (1) convenience of the parties; (2) convenience of the witnesses; (3) ease of access to the evidence; (4) familiarity of each forum with the applicable law; (5) feasibility of consolidation with other claims; (6) local interest in the controversy; and (7) the relative court congestion and time of trial in each forum.

Civil Procedure > Venue > Motions to Transfer > General Overview
*HN3* Transfer is not appropriate where it would merely shift the inconvenience from one party to the other.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
*HN4* Personal jurisdiction can be either "general" or "specific," but the basic rule is that the defendant must have certain minimal contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Torts > Business Torts > Fraud & Misrepresentation > General Overview
*HN5* Cal. Lab. Code § 970 governs misrepresentation in the employment setting.

Torts > Business Torts > Fraud & Misrepresentation > General Overview
*HN6* See Cal. Lab. Code § 970.

**COUNSEL:** For Bashker D. Biswas, Plaintiff: E. Gerard Mannion, Mannion & Lowe, San Francisco, CA. Wesley M. Lowe, Mannion & Lowe, San Francisco, CA.

For HR Value Group, Cuna Mutual Group, Cuna Mutual Insurance Society, Defendants: Joanna D. Opperman, Hinshaw & Culbertson, San Francisco, CA.

**JUDGES:** CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES R. BREYER

**OPINION**

**ORDER GRANTING TRANSFER**

This lawsuit arises out of the termination of plaintiff's employment as Chief Executive Officer of defendant HR Value Group ("HR Value"). Now before this Court is defendants' motion to transfer, motion to dismiss for lack of personal jurisdiction, motion to dismiss for improper

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19164    Page 21 of 45

Case 4:08-cv-01849-SBA   Document 6   Filed 06/05/2008   Page 3 of 7

venue, and motion to dismiss defendant CUNA Mutual Group ("CMG"). After carefully considering the papers filed by the parties and having had the benefit of oral argument, the motion to transfer is GRANTED, the motions to dismiss for lack of personal jurisdiction [*2] and improper venue are DISMISSED as moot, and the motion to dismiss defendant CUNA Mutual Group is DISMISSED without prejudice to being renewed before the transferee court.

## I. BACKGROUND

### A. Factual Background

Defendant HR Value is a Wisconsin limited liability corporation with its principal place of business in Wisconsin. CUNA Mutual Investment Corporation, who is not a party to this action but is the subsidiary of defendant CUNA Mutual Insurance Society ("CMIS"), owns 49% of the stock of HR Value. The remaining 51% of HR Value is owned by credit union leagues or their service corporations. HR Value was formed to provide human resource products, such as recruitment, compensation and training, to credit unions. HR Value Groups's test markets during plaintiff's employment were Ohio and Pennsylvania.

Defendant CMIS is a mutual insurance company incorporated in Wisconsin. Its principal place of business is also in Wisconsin. CMIS and its subsidiaries provide various insurance, financial services, and products to credit unions around the world. CMIS and its subsidiaries use the trade name "CUNA Mutual Group" to market its products and services.

Plaintiff, who is a California [*3] resident, was recruited and hired by HR Value to be the Chief Executive Officer. He first came to HR Value's attention through an executive recruiter, Kron/Ferry International. There were several interviews conducted between plaintiff, Kron/Ferry, Thomas Olson (an HR Value Board member) and other staff from CMIS. These interviews were conducted over the phone, and in person in Chicago and Florida. After the final interview, HR Value made an offer to plaintiff in California for the position of Chief Executive Officer. Olson later confirmed the offer in writing.

During the interview process, HR Value told plaintiff that the position would require plaintiff to relocate from California to the mid-west, which he did in March, 2001. Plaintiff's office was temporarily located in Madison, Wisconsin, but plaintiff then elected to move the office to Schaumburg, Illinois. For reasons not in the record, plaintiff then moved the office to Chicago, Illinois and later back to Schaumburg. HR Value's offices remained in this location until plaintiff's termination, after which HR Value moved to Middleton, Wisconsin.

Plaintiff's primary responsibilities were to develop human resource services to market [*4] to credit unions and leagues. He performed these duties either from his offices in Illinois or during business travel, which was often to the east coast. HR Value never targeted credit union and leagues in California before or during plaintiff's employment, nor has HR Value done any business in California since plaintiff's termination. On August 30, 2001, HR Value discharged plaintiff on the grounds that he did not satisfactorily perform his duties of hiring staff, creating human resource products, and marketing those products to credit unions.

### B. Procedural History

Plaintiff filed a complaint against HR Value, CMIS, and CMG in Alameda County Superior Court for breach of contract, wrongful termination, breach of implied covenant of good faith and fair dealing, violation of Labor Code section 970, misrepresentation, employment discrimination, conversion, and interference with prospective economic advantage and contractual relations. Defendants HR Value and CMIS d.b.a. CMG removed the action to this Court on the basis of diversity jurisdiction.

Defendants request that the case be transferred to the Western District of Wisconsin

Get a Document - by Citations - 2002 U.S. Dist. LEXIS 19164    Page 4 of 7

Case 4:08-cv-01949-SBA   Document 6   Filed 06/05/2008   Page 22 of 45

pursuant to 28 U.S.C. section 1404(a). **[*5]** Defendants argue that transfer is proper because the witnesses and most of the evidence are located in Wisconsin, Illinois, and other eastern states and because Wisconsin's interest in this controversy outweighs that of California.

## II. DISCUSSION

### A. Legal Standard for 28 U.S.C. section 1404(a) Transfer

*HN1* 28 U.S.C. section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *HN2* "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal v. Commonwealth Edison*, 805 F.2d 834, 843 (9th Cir. 1986). A plaintiff's choice of forum is accorded substantial weight in proceedings under 28 U.S.C. section 1404(a). *See id.*

In order to meet its heavy burden to justify a transfer, the defendants must demonstrate that the following factors strongly favor venue in Wisconsin: (1) convenience of the parties; (2) convenience of the witnesses; (3) ease of access to the evidence; **[*6]** (4) familiarity of each forum with the applicable law; (5) feasibility of consolidation with other claims; (6) local interest in the controversy; and (7) the relative court congestion and time of trial in each forum. [1] *Id.*

### FOOTNOTES

[1] In this case, feasibility of consolidation with other claims and the relative court congestion are not relevant to the analysis.

Here, defendants argue that venue is proper in the Western District of Wisconsin as both defendants reside there, part of the alleged wrong occurred there, the plaintiff once worked in Madison, Wisconsin, and witnesses reside there.

### B. Analysis of relevant factors

### 1. Convenience of parties

This factor weighs in favor of not transferring the action since transferring to Wisconsin will simply shift the inconvenience from defendants to plaintiff. *See Decker Coal*, 805 F.2d at 843 *HN3* (transfer is not appropriate where it would merely shift the inconvenience from one party to the other).

### 2. Convenience of witnesses

This factor **[*7]** weighs heavily in favor of transfer. All of defendants' witnesses reside in Wisconsin, Illinois and some eastern states. Also, the recruiting firm that first brought plaintiff to defendants' attention is located in Chicago. In contrast, plaintiff has presented no evidence of any witnesses that reside in California, other than plaintiff himself.

### 3. Ease of access to evidence

This factor weighs in favor of transfer as most of the relevant evidence is located in Wisconsin. The relevant documents pertaining to plaintiff's employment with HR Value are located at HR Value offices in Middleton, Wisconsin.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19164

Case 4:08-cv-01849-SBA   Document 6   Filed 06/05/2008   Page 23 of 45

Page 5 of 7

## 4. Governing law

This factor weighs in favor of transferring since this action will most likely apply Wisconsin state law to all of the claims, with the exception of the California Labor Code section 970 claim. HR Value was formed in Wisconsin, the employment relationship commenced in Wisconsin, the alleged discrimination and conversion occurred in Illinois, and plaintiff was terminated in Wisconsin; therefore, Wisconsin law will be applied to the claims arising out of these alleged acts.

## 5. Local interest of the forum in adjudicating the case

This factor weighs heavily **[*8]** in favor of transferring since the interest of California in adjudicating the case is limited. Plaintiff lived here prior to and after his employment with HR Value and this District has an interest in this case to the extent that it has a general interest in its citizens. However, California law will not apply to nearly any of the claims in this case. This case is about employment with a Wisconsin corporation that occurred in Wisconsin and Illinois. Wisconsin has a greater interest in ensuring that its corporations comply with its laws than does California, especially with respect to employees who resided in Wisconsin (and nearby Illinois), during their employment. The only thing that happened in California was that plaintiff made the decision to accept a job offer by HR Value while living there and returned to California when that employment was terminated.

## 6. Interest of justice factor: personal jurisdiction

Moreover, this case presents a difficult question as to personal jurisdiction over defendant HR Value. *HN4* Personal jurisdiction can be either "general" or "specific," but the basic rule is that the defendant must have certain minimal contacts with the forum such that the **[*9]** maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Data Disc, Inc. v. Systems Technology Assoc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)).

This Court does not have alter ego general jurisdiction over HR Value. This Court also does not have specific jurisdiction over the breach of contract, wrongful termination, and employment discrimination claims against HR Value because the events that led to the alleged injuries do not relate to HR Value's California activities (i.e. employment negotiations). The alleged breach of contract and wrongful termination occurred while plaintiff was living in Illinois, after he had moved from California. Likewise, any alleged employment discrimination had to have occurred in Illinois or Wisconsin.

One possible claim that this Court could have specific jurisdiction over is the conversion claim. Plaintiff alleges that after he was terminated and moved back to California, HR Value took, used, and converted plaintiff's intellectual property and his personal files and material for its **[*10]** own uses. *See* Compl. at P41. Plaintiff also alleges that HR Value improperly and wrongfully used his credit card after he had moved back to California. *See* Compl. at P42.

Plaintiff argues that these acts were aimed at plaintiff after he returned to California and caused injuries to him while he was living in California. While plaintiff was living in California when the alleged harm was done, the acts which caused the alleged harm (i.e. use of intellectual property) did not arise from the defendants' forum related activities (i.e. employment negotiations). Thus, this Court does not have personal jurisdiction over the conversion claim.

The misrepresentation and California Labor Code section 970 [2] claims presents a more difficult jurisdictional question. Plaintiff alleges that HR Value made misrepresentations during

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19164

Case 4:08-cv-01849-SBA    Document 6    Filed 06/05/2008    Page 24 of 45    Page 6 of 7

the interview process which defrauded him and induced him to relocate to another state. However, HR Value's purposeful interjection with California is not great. HR Value never physically came to California and there was an understanding by both parties that the offices would not be in California.

## FOOTNOTES

2 *HN5* California Labor Code section 970 governs misrepresentation in the employment setting and states: *HN6* "No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either: (a) The kind, character, or existence of such work; (b) The length of time such work will last, or the compensation therefor; (c) The sanitary or housing conditions relating to or surrounding the work; (d) The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought."

**[*11]** The question of personal jurisdiction over the misrepresentation claims is close. Giving plaintiff the benefit of the doubt, this Court would still only have personal jurisdiction over two of plaintiff's claims as to HR Value. However, there is no doubt that the Western District of Wisconsin does have personal jurisdiction over HR Value because it is incorporated and headquartered there. Because this Court's personal jurisdiction over HR Value is not conclusive, the "interest of justice" factor weighs in favor of transfer.

## C. Summary

Plaintiff's choice of forum is granted substantial weight when deciding whether to transfer pursuant to 28 U.S.C. section 1404(a); however, defendants have met their heavy burden to show that the convenience of the parties and witnesses and the interests of justice warrant transfer. This case is about plaintiff's employment with a Wisconsin corporation which occurred in Wisconsin and Illinois and as such should be litigated in Wisconsin.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to transfer is GRANTED. In light of this order, defendants' motions to dismiss for lack of personal jurisdiction **[*12]** and improper venue are DISMISSED as moot. Defendants' motion to dismiss CUNA Mutual Group is DISMISSED without prejudice to being renewed before the transferee court.

**IT IS SO ORDERED.**

Dated: October 3, 2002

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE.

# EXHIBIT C

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 12659

Page 1 of 10

Case 4:08-cv-01849-SBA    Document 6    Filed 06/05/2008    Page 26 of 45

*1999 U.S. Dist. LEXIS 12659, **

LISA JARVIS, Plaintiff, v. MARIETTA CORPORATION, and DOES 1 to 50, Defendants.

No. C 98-4951 MJJ

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1999 U.S. Dist. LEXIS 12659

August 12, 1999, Decided
August 12, 1999, Filed; August 16, 1999, Entered in Civil Docket

**DISPOSITION:** **[*1]** Defendants' motion to transfer venue to the Northern District of New York GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant former employer filed a motion to transfer venue, pursuant to 28 U.S.C.S. § 1404, of plaintiff former employee's action to recover for breach of contract, wrongful termination, and sexual harassment.

**OVERVIEW:** Plaintiff former employee sued defendant former employer alleging breach of contract, wrongful termination, and sexual harassment. The court granted defendant former employer's motion to transfer venue, pursuant to 28 U.S.C.S. § 1404. Defendant was able to overcome the strong presumption in favor of plaintiff's choice of forum by showing that the convenience of the parties and witnesses and the interest of justice weighed heavily in favor of a transfer to a district where the action might have been brought. Despite California's interest in protecting plaintiff as a citizen, all of the specific actionable events at issue occurred outside the state, predominantly in New York. Defendant's principle place of business was located in New York and the expense of sending a significant number of its employee witnesses to another state for purposes of trial and the relative access to important documentary evidence would have been burdensome. Plaintiff was already defending a suit in New York so convenience of her counsel was not a relevant factor. Further, a New York court would have been more familiar with the controlling state law.

**OUTCOME:** The court granted defendant former employer's motion to transfer venue of plaintiff former employee's action for breach of contract, wrongful termination, and sexual harassment because defendant was able to overcome the presumption in favor of plaintiff's choice of forum with evidence that the convenience of the parties and witnesses and the interest of justice supported a transfer.

**CORE TERMS:** venue, convenience, reside, choice of forum, interests of justice, important factor, consolidation, applicable law, local interest, disclosure, congestion, inconvenience, termination, feasibility, sexual, human resources, moving party, personal jurisdiction, operative facts, headquarters, familiarity, harassment, non-party, resident, weighs, ease, sexual harassment, defending, customer, state law

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN1*⬩ Venue is governed by 28 U.S.C.S. § 1404(a). 28 U.S.C.S. § 1404(a) provides that

**EXHIBIT C**

for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought. The purpose of the section is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Under 28 U.S.C.S. § 1404(a), the moving party has the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum.

Civil Procedure > Venue > Motions to Transfer > Choice of Forum
Civil Procedure > Venue > Motions to Transfer > Convenience of Parties
Civil Procedure > Venue > Motions to Transfer > Interests of Justice
**HN2** In order to support a motion to transfer venue, the moving party must show that the forum to which they seek transfer is a forum in which the action originally might have been brought. In addition, the transfer must be for the convenience of the parties and witnesses and in the interests of justice. The factors to be considered in making this determination include: 1) plaintiff's choice of forum, 2) convenience of the parties, 3) convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims, 7) any local interest in the controversy, and 8) the relative court congestion and time of trial in each forum.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
**HN3** Transfer under 28 U.S.C.S. § 1404(a) is limited to courts where the action might have been brought. The transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court.

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Venue > Motions to Transfer > Choice of Forum
**HN4** In considering motions to transfer venue, there is a strong presumption in favor of plaintiff's choice of forum. Therefore, there is a heavy burden on the defendant to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer.

Civil Procedure > Venue > Federal Venue Transfers > General Overview
**HN5** While the plaintiff's choice of forum is to be given great weight, it is not the final word. In determining the weight to be given to this choice, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled to only minimal consideration.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
**HN6** Convenience of counsel is not a relevant factor in determining whether transfer of venue under 28 U.S.C.S. § 1404(a) is proper.

Civil Procedure > Venue > Federal Venue Transfers > General Overview
**HN7** One of the most important factors in determining whether to grant a motion to transfer is the convenience of the witnesses. To demonstrate inconvenience, the moving party should produce information regarding the identity and location of the

witnesses, the content of their testimony, and why such testimony is relevant to the action. The court considers not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony.

Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN8* Convenience of non-party witnesses, rather than of employee witnesses, is a more important factor and therefore afforded greater weight.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN9* Absent any other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to support a motion for transfer. However, where the location of the evidence is supported by other factors in favor of transfer, the relative ease of access to proof is an important factor to be considered in deciding whether to grant a motion to transfer under 28 U.S.C.S. § 1404.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Federal & State Interrelationships > Choice of Law > Forum & Place
*HN10* An important factor in determining whether transfer of venue is warranted is the interest of having the trial in a forum that is familiar with the law. A change of venue under 28 U.S.C.S. § 1404(a) generally should be, with respect to state law, but a change of courtrooms. Therefore, a transferee court is obligated to apply the applicable law that would govern the transferor court.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN11* The feasibility of consolidation of claims is also a factor for the court to consider in determining whether to allow a transfer of venue motion under 28 U.S.C.S. § 1404(a).

Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN12* Another important consideration in granting a motion to transfer venue is the local interest in having local controversies decided at home.

Civil Procedure > Venue > Federal Venue Transfers > General Overview
*HN13* An increasingly important factor in determining transfer of venue motions involves the consideration of average trial times and court congestion.

**COUNSEL:** For LISA JARVIS, Plaintiff: Maurice Moyal, Concord, CA.

For MARIETTA CORPORATION, defendant: Robert V. Kuenzel, San Rafael, CA.

**JUDGES:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARTIN J. JENKINS

**OPINION**

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**

**INTRODUCTION**

Before the Court is Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a). After reviewing the pleadings, the Court finds that despite the presumption in favor of a

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 12650    Page 29 of 45    Page 4 of 10

Case 4:08-cv-01376-SBA    Document 5    Filed 06/05/2008

plaintiff's choice of venue, the convenience of the parties and witnesses, and the interests of justice warrant transfer. Therefore, defendant's motion to transfer venue to the Northern District of New York is GRANTED.

## FACTUAL BACKGROUND

This breach of contract, wrongful termination, and sexual harassment case was originally filed in the Contra Costa Superior Court on November 2, 1998 by Plaintiff Lisa Jarvis against her former employer, Marietta Corporation. On December 31, 1998, this action was removed to this Court based on diversity and because the amount in controversy exceeded $ 75,000. On July 28, 1998, three **[*2]** months before this action was filed, Marietta filed a complaint against Jarvis for alleged breach of a confidentially agreement in the New York State Supreme Court for Cortland County (New York Action). In that action, Marietta alleged that Jarvis misappropriated information upon her resignation for her own use as well as for the use of her new employer, one of Marietta's competitor's. Marietta claimed that as a result of Jarvis's conduct it has already lost one customer and has had to offer reductions to other customers in order to keep their business. Jarvis has answered the complaint and is currently defending that action.

Here, Jarvis alleges five causes of action, including termination in violation of public policy, breach of implied covenant of continued employment, breach of the implied covenant of good faith and fair dealing, sexual harassment, and intentional infliction of emotional distress. Jarvis claims that her supervisor, Marietta's Vice President Roger H. Austin, made sexual advances and directed sexual innuendoes towards her on various occasions. Plaintiff also alleges that because of her failure to submit to his advances, and because Austin heard that Plaintiff had **[*3]** allegedly complained about him to the Director of Marietta's Human Resources Department, Gail Sechrist, Austin retaliated against Jarvis.

Austin allegedly retaliated by criticizing Jarvis' performance and competence, by causing her to be humiliated in front of the company's president at a sales meeting in Las Vegas because of his failure to warn her to be prepared for that meeting, and by causing Jarvis to be absent from a mandatory meeting in New York by failing to inform her that attendance was mandatory. Plaintiff claims that because of these actions, she was faced with a hostile work environment which led to her eventual resignation form the company on April 14, 1998.

Marietta is incorporated in New York, with its principal place of business, corporate headquarters, and its main production warehouse in Cortland, New York. Marietta claims it has never had more than four employees in California, and those employees worked out of their homes as sales representatives territory managers, or regional managers. Marietta has never had any offices within California. Plaintiff was interviewed and hired by the New York office as an at-will employee under New York state law. Plaintiff received **[*4]** both her pay and benefits from New York, and all of the terms and conditions of her employment were governed by New York law. Plaintiff also received her customer service, design, pricing, marketing, and other support from the Company's New York offices. Plaintiff resides within the Northern District of California, and worked out of her home during her employment with Marietta.

As discussed below, the majority of documents concerning Jarvis' employment, performance and sales at Marietta, including human resources information and financial records, are located at Marietta's New York headquarters. Further, of the witnesses identified in the parties' initial disclosures, a majority are located either in New York, the eastern United States or Canada. Only five witnesses, including Jarvis, reside in the state of California. Finally, many of the witnesses provided by Defendant are current Marietta employees.

## ANALYSIS

## I. Legal Standard

**HN1** Venue is governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district **[*5]** or division where the action might have been brought." 28 U.S.C. § 1404(a) (1998). The purpose of section is to "prevent the waste of 'time energy and money' and to 'protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)). Under section 1404(a), the moving party has the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).

**HN2** In order to support a motion to transfer venue, the moving party must show that the forum to which they seek transfer is a forum in which the action originally might have been brought. *See Hoffman v. Blaski*, 363 U.S. 335, 344, 4 L. Ed. 2d 1254, 80 S. Ct. 1084 (1960). In **[*6]** addition, the transfer must be for the convenience of the parties and witnesses and in the interests of justice. The courts in this Circuit have set forth several factors to be considered in making this determination. These factors include 1) plaintiff's choice of forum, 2) convenience of the parties, 3) convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims, 7) any local interest in the controversy, and 8) the relative court congestion and time of trial in each forum. *See Decker Coal*, 805 F.2d at 843, *Linear Technology Corp. v. Analog Devices, Inc.*, 1995 U.S. Dist. LEXIS 4548, 1995 WL 225672, *1 (N.D. Cal. 1995); *Teknekron Software Systems, Inc. v. Cornell University*, 1993 WL 215024, *7 (N.D. Cal. 1993); *University of California v. Eli Lilly & Co.*, 21 U.S.P.Q.2D (BNA) 1201, 1207 (N.D. Cal. 1991).

## II. The "Might Have Been Brought" Standard

**HN3** Transfer under section 1404(a) is limited to courts where the action "might have been brought." *See Hoffman*, 363 U.S. at 344; *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386 (9th Cir. 1974). **[*7]** The transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court. *See Hoffman*, 363 U.S. at 343-44. Here, it is undisputed that the Northern District of New York satisfies all three of these requirements.

The Northern District of New York has proper personal jurisdiction over Marietta because it is a company incorporated in New York. Further, it has proper subject matter jurisdiction over the claim based on diversity, and because the amount in dispute exceeds $ 75,000. Finally, venue is proper pursuant to 28 U.S.C. § 1391(c) for corporations in any district in which a court has proper personal jurisdiction over that corporation. Therefore, since the action "might have been brought" in the Northern District of New York, we now turn to a consideration of the convenience and justice factors at issue in this case.

## III. Convenience Factors

### A. Plaintiff's Choice of Forum

**HN4** In considering motions to transfer venue, there is a "strong presumption in favor of plaintiff's choice of forum." *Piper Aircraft*, 454 U.S. at 255. **[*8]** Therefore, there is a heavy burden on Defendant to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer. *See Decker Coal*, 805 F.2d at 843 (9th Cir. 1986).

Get a Document - by Citation - 1992 U.S. Dist. LEXIS 12650    Page 31 of 45

Case 4:07-cv-01949-SBA    Document 5    Filed 06/05/2008    Page 6 of 10

*HN5* While Plaintiff's choice of forum is to be given great weight, it "is not the final word" *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). In determining the weight to be given to this choice, "consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled to only minimal consideration." *Id.* [1]

## FOOTNOTES

1 Jarvis' assertion that harassment took place in many different areas in addition to New York is unsupported by any competent evidence and is therefore stricken.

**[*9]** Beyond any contacts Plaintiff may have with the Northern District of California as a resident, there is not competent evidence that establishes that this forum has a "particular interest" in the matter at issue. While California does have an interest in protecting its citizens, all of the specific actionable events at issue here happened outside of California, and predominantly occurred in New York. Furthermore, it seems that Defendant's only contact with California has been with the four individuals it has employed within the state. However, as previously mentioned, the terms and conditions of their employment are governed pursuant to New York law.

Finally, Jarvis claims that because California is her residence, her choice of forum should be given greater weight. However, Jarvis cites no authority within this circuit to support this contention. Further, Jarvis' reliance on *Dwyer* seems to further diminish the strength of her argument, since it states that a plaintiff's choice of forum should be given less weight when it is not "the place where the operative facts of the action occurred." *See Dwyer*, 853 F. Supp. 690 at 694; *Teknekron*, 1993 WL 215024, **[*10]** *7 (plaintiff's choice of forum, although plaintiff is a resident of that forum, is entitled to limited deference where center of gravity of action is New York, not California).

## B. Convenience of the Parties

The convenience of the parties is also an important factor in determining whether to allow a transfer of venue. Jarvis is a resident of California, while Defendant is a New York corporation with its principal place of business in New York. The burdens associated with traveling across the country to litigate are relatively equal for all parties. Jarvis is already defending the New York action in New York state court and is therefore required to travel there to defend herself anyway. Further, Marietta is a large company and presumably has the financial means to support litigation in California. However, it would be burdensome on Marietta to send a significant number of its employees to California for purposes of trial. These employees, such as Marietta's vice president Austin, are involved in the daily operations of the company and it could be detrimental to business to remove them from their duties.

Finally, despite Plaintiff's contention to the contrary, *HN6* convenience of **[*11]** counsel is not a relevant factor in determining whether transfer of venue under section 1404(a) is proper. *See NCL America Computer Products v. BSM Computers, Inc.*, 1993 U.S. Dist. LEXIS 15332, 1993 WL 280565, *2 (citing *Solomon v. Continental American*, 472 F.2d 1043, 1047 (3d Cir. 1973)). Moreover, given the pending New York action, it is unclear that the factor supports transfer of this matter.

## C. Convenience of the Witnesses

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 12659    Page 7 of 10

Case 4:08-cv-01949-SBA    Document 6    Filed 06/05/2008    Page 32 of 45

*HN7* One of the most important factors in determining whether to grant a motion to transfer is the convenience of the witnesses. To demonstrate inconvenience, the moving party "should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action . . . The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony." *Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2D (BNA) 1468, 1470 (C.D. Cal. 1996).

In its initial disclosures, Defendant identified a total of thirty-one witnesses that would have information regarding the sexual harassment action, the retaliation action, and Plaintiff's **[*12]** general performance as a Marietta employee. (Kuenzel Decl., paras. 6-8). Among those listed, only Plaintiff and one other witness reside in the Northern District of California, while three others reside within the State of California. Three additional witnesses reside in the western half of the United States. However, fifteen of these witnesses reside within the Northern District of New York and eight others reside in the eastern United States and Canada. At least seven of the witnesses identified by Marietta are non-party witnesses, and of those none reside in this District. (Kuenzel Decl., Exh. E).

In Plaintiff's initial disclosure, Plaintiff is the only witness identified that resides within the Northern District of California. (Kuenzel Decl., Exh. F). Of the remaining witnesses, one resides elsewhere in California, one resides in New Jersey, and two in Canada. Plaintiff also lists two expert witnesses, both of whom conduct business within the Northern District of California.

From these disclosures, it is clear that a majority of the witnesses are located in or near the Northern District of New York so as to make that district a more convenient forum for the witnesses in this **[*13]** case. However, since many of these witnesses are employees of Defendant, their inconvenience should be given less weight in the section 1404 context since they could be compelled to testify. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988). Given that several of the non-party witnesses identified by the parties reside in the eastern United States or Canada, transfer to the Northern District of New York seems more convenient for those witnesses as well. *See Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) *HN8* (convenience of non-party witnesses, rather than of employee witnesses, is a more important factor and therefore afforded greater weight).

Finally, the relative financial burdens on the parties for compelling witness testimony must be considered. As previously mentioned, although Marietta has no offices in California, it is a large corporation doing business in California through its representatives. While the costs associated with obtaining the witnesses' presence in California would be substantial, it does not seem that it would be an extraordinary financial burden **[*14]** on Marietta. On the other hand, Plaintiff's cost of getting witnesses to New York would most likely not be much higher than getting those same witnesses to California.

Given the location of the witnesses and the purported purposes of presenting these witnesses, the convenience of the witnesses weighs in favor of transferring this case to the Northern District of New York.

## D. Ease of Access to Evidence

*HN9* Absent any other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to support a motion for transfer. *See STX*, 708 F. Supp. at 1556. However, where as here, the location of the evidence is supported by other factors in favor of transfer, the relative ease of access to proof is an important factor to be considered in deciding whether to grant a motion to transfer under section 1404. *See Decker Coal*, 805 F.2d at 843.

Here, the record shows that a majority of the documentary evidence, including corporate records, financial records, sales information, human resources files, and documents related to Plaintiff's alleged breach of the confidentiality agreement, are all located at the company's **[*15]** headquarters in Cortland, New York, within the Northern District of New York (Sechrist Decl., P 9) Furthermore, as Defendant points out, all of the relevant documents listed by Plaintiff in her initial disclosures are located in New York as well. (Kuenzel Decl, Ex. F, 2). While it is true that it would be easy to simply mail these documents to this Court for trial, it would be markedly easier to obtain these documents if the trial was held in New York. Finally, as Magistrate Judge Brazil noted in *Linear Technology*, "encouraging [the movement of documents] also would increase risks that the best evidence would be lost--thus implicating larger interests in the administration of justice." *See* 1995 WL 225672, *3.

Therefore, the Court finds that the convenience of the parties and witnesses in this case favors transfer of venue in this action. Especially given that fact that Plaintiff is defending another suit in New York, and that many of the parties and witnesses are located in the eastern United States and Canada, transfer to the Northern District of New York is warranted.

## IV. Interests of Justice

### A. Familiarity of Each Forum with the Applicable Law

**[*16]** *HN10* An important factor in determining whether transfer of venue is warranted is the interest of having the trial in a forum that is familiar with the law. *See Decker Coal*, 805 F.2d at 843. The United States Supreme Court has stated that "[a] change of venue under [section] 1404(a) generally should be, with respect to state law, but a change of courtrooms." *See Van Dusen*, 376 U.S. at 639; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 519, 108 L. Ed. 2d 443, 110 S. Ct. 1274 (1990). Therefore, a transferee court is obligated to apply the applicable law that would govern the transferor court. *See id.* The applicable law in this case, whether it is tried in New York or California, is New York law. This case involves an alleged breach of contract, wrongful termination, and sexual harassment claim based on an employment contract governed by New York law. Clearly, a New York court would be more familiar with the contours and applicability of New York law.

### B. Feasibility of Consolidation of Other Claims

*HN11* The feasibility of consolidation of claims is also a factor for the court to consider in determining whether to allow a transfer **[*17]** of venue motion under section 1404(a). *See Decker Coal*, 805 F.2d at 843; *Eli Lilly & Co.*, 21 U.S.P.Q.2D (BNA) at 1207. Defendants claim that the facts and parties involved with this claim are the same as those in the pending New York Action. Defendant contends that Jarvis' employment with Marietta, her termination, and post-termination events are an essential part of both actions. It further claims that "the allegations to be litigated in the New York action are also at issue in this action by reason of Marietta's affirmative defense of offset." (Def's Motion to Transfer, 1). On the other hand, Jarvis claims that the New York Action deals with a breach of a confidentiality agreement while the present action is a sexual harassment and unemployment claim that is unrelated to the action filed in New York state. (Plaintiff's Opp., 7).

Given these facts, consolidation appears to be feasible in this case. While the claims do not involve all of the same relevant facts and claims, they do involve the same parties, and many of the same documents and witnesses would be essential to litigating both actions. Therefore, a transfer to the Northern District of New York **[*18]** in this case will result in judicial economy in furtherance of the interests of justice. *See NCL America Computer Products v. BSM Computers, Inc.*, 1993 WL 280565, *1 (citing *A.J. Indus.*, 503 F.2d 384); *but see Linear Technology*, 1995 WL 225672, *4 (court held where there was no "meaningful overlap between the vast majority of the matters" that were to be litigated, consolidation would not be

feasible). [2]

**FOOTNOTES**

[2] Jarvis claims that Defendants participated in unprofessional delay tactics by first removing this case to federal court, and then attempting to transfer venue several months later. (Plaintiff's Opp., 7). However, as Defendants point out, it would have been improper for Defendants to attempt to directly remove this case from California state court to a federal court in New York. Pursuant to 28 U.S.C. § 1446, a notice of removal may only be filed in the federal court for the district in which the state action is pending.

## C. Local [*19]  Interest in the Controversy

HN12 An another important consideration is the "local interest in having local controversies decided at home." *Decker Coal*, 805 F.2d at 843 (internal quotations omitted). Here, the actions which substantiate the claim occurred predominantly in New York and involve a New York corporation. While California does have an interest in protecting its citizens, New York clearly has an interest in its corporations and the activities they undertake. See *Hi-Pac, Ltd. v. Avoset Corp.*, 980 F. Supp. 1134, 1141 (D. Haw. 1997). Especially given that most of the documentary evidence, witnesses and actions at issue in this case are, or occurred in, New York, New York has a greater local interest in the controversy at issue than does California.

## D. Relative Court Congestion

HN13 An increasingly important factor in determining transfer of venue motions involves the consideration of average trial times and court congestion. See *Decker Coal*, 805 F.2d at 843. As Defendant notes, the time lapse from filing a case to its completion is somewhat longer in the Northern District of New York than in the Northern District of California. **[*20]** (Kuenzel Decl., Exh. G). While the Court has some familiarity with the operative facts, the Northern District of New York has had no involvement with this case. However, the time to trial and relative congestion of the two courts at issue here are sufficiently similar on this record so as to render this factor relatively neutral in the considering the transfer of venue motion.

An evaluation of the applicable law in this case, the feasibility of consolidation, any local interest in the controversy at issue, and relative court congestion supports the Court's finding that the interests of justice would be furthered by transferring this action to the Northern District of New York.

## CONCLUSION

For the convenience of the parties and witnesses, and in the interest of justice, the Court hereby GRANTS Defendants' motion to transfer venue to the Northern District of New York.

**IT IS SO ORDERED.**

Dated: 8/12/99

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **1999 U.S. Dist. LEXIS 12659**

# EXHIBIT D

*1993 U.S. Dist. LEXIS 21337, \**

TEKNEKRON SOFTWARE SYSTEMS, INC., Plaintiff, v. CORNELL UNIVERSITY and ISIS DISTRIBUTED SYSTEMS, INC., Defendants.

CIVIL NO. 93-20122 SW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1993 U.S. Dist. LEXIS 21337

June 14, 1993, Decided
June 14, 1993, Filed

**DISPOSITION: [\*1]** Isis' motion to dismiss for lack of personal jurisdiction DENIED and motion to transfer to Northern District of New York GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff software company filed an action in federal court in California for patent infringement against defendants, a university and a consulting company. The consulting company filed a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer the matter to federal court in New York.

**OVERVIEW:** The software company, which was based in California, obtained a patent for a networking software package. The university, based in New York, developed a networking program, and the consulting company, based in New York, marketed an enhanced version of the product. Six of the licensees of the enhanced product were in California. The software company brought an action in federal district court in California, alleging that a component in the enhanced version of the university's software, marketed by the consulting company, infringed on the software company's patent. The consulting company filed a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer the matter to New York. The court held that it had personal jurisdiction because the consulting company purposefully availed itself of the benefits of California and the California contacts arose out of the activity upon which the complaint was based. However, the court held that under 28 U.S.C.S. § 1404(a), venue should have been transferred to New York because the cost of the litigation would have been reduced, it was more convenient for both parties, and the action could have been brought there.

**OUTCOME:** The court denied the motion to dismiss for lack of personal jurisdiction but granted the motion to transfer the matter to federal district court in New York.

**CORE TERMS:** personal jurisdiction, software, forum state, infringement, purposeful, purposefully, licensee, patent, availment, interest of justice, customer, license, insurer, users, exercise of jurisdiction, convenience, patent infringement, minimum contacts, choice of forum, licensing, venue, general jurisdiction, center of gravity, inconvenience, negotiations, negotiated, convenient, resident, availed

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to

**EXHIBIT D**

Dismiss

**HN1** Although Fed. R. Civ. P. 12(b)(2) governs a motion to dismiss for lack of personal jurisdiction, Rule 12(b)(2) does not prescribe the procedure for resolving such a motion. Case law indicates that a court has two options: (1) it can decide the motion on the basis of the plaintiff's affidavits submitted in response to the motion, or (2) it can delay a decision pending further discovery and hold an evidentiary hearing. No matter which procedure is used, the plaintiff has the burden of establishing the court's jurisdiction. However, if the court decides to rule on the basis of affidavits alone, plaintiff's burden is met with a simple prima facie showing of personal jurisdiction.

Civil Procedure > Jurisdiction > Jurisdictional Sources > Constitutional Sources
Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources
Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > General Overview

**HN2** In diversity cases, a federal district court is bound by the personal jurisdiction statute of the state in which it sits; however, the district court must ensure that its exercise of jurisdiction under that statute comports with the United States Constitution's due process requirements.

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview
Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview

**HN3** The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has had certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." If the defendant's activities in the forum state are "substantial" or "continuous and systematic," general jurisdiction may be asserted even if the cause of action is unrelated to those activities. If the defendant's activities are not "substantial" or "continuous and systematic," the court may not exercise jurisdiction unless the following three criteria are met: (1) the nonresident purposefully directed his actions toward the forum state, or purposefully availed himself of the privilege of conducting activities in the forum state, (2) the claim arose out of or resulted from the defendant's forum-related activities, and (3) an exercise of jurisdiction would be reasonable.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview

**HN4** Purposeful availment requires affirmative conduct which allows or promotes the transaction of business within the forum. A defendant can satisfy the purposeful availment standard either by taking deliberate actions within the forum state or by creating continuing obligations to forum residents.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview

**HN5** A defendant does not establish the minimum contacts sufficient for jurisdiction merely by entering a contract with a party in the forum state. Rather, the defendant's contacts with the forum state must be "substantial" and not merely "random, fortuitous or attenuated," a determination which turns on prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview

*HN6* Continuing obligations need not be extensive to constitute purposeful availment.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview

*HN7* A plaintiff need only make a prima facie showing that jurisdiction is proper.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview

*HN8* In the Court of Appeals of the United States for the Ninth Circuit, there are a number of factors that are relevant in determining whether the exercise of jurisdiction is proper: (1) the extent of purposeful interjection into the forum state, (2) the burden on the defendant of defending in the forum, (3) the extent of conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview

*HN9* A defendant who has purposely derived commercial benefit from his contacts in a state may not defeat jurisdiction there simply because of his adversary's greater net wealth.

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview
Civil Procedure > Venue > Forum Non Conveniens

*HN10* It is not enough to defeat personal jurisdiction that a defendant demonstrates that some other forum is more reasonable, it must show a due process violation. It must show that jurisdiction would make the litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers

*HN11* 28 U.S.C.S. § 1404(a) provides that for the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers

*HN12* There are a number of considerations in determining the convenience factor of 28 U.S.C.S. § 1404(a): (1) the plaintiff's choice of forum, (2) relative ease of access to sources of proof, (3) the availability of compulsory process for attendance of unwilling witnesses, (4) the costs of securing witness attendance, (5) relative expense of trial, (6) location where the events at issue took place, (7) administrative difficulties and delay of forum court, and (8) local interest of controversy.

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Venue > Motions to Transfer > Choice of Forum

*HN13* A plaintiff's choice of forum is accorded substantial weight in proceedings under 28 U.S.C.S. § 1404(a). A transfer is not appropriate merely to shift the inconvenience from one party to another, and courts generally frown upon transfers unless the convenience and justice factors strongly favor venue elsewhere.

Get a Document - by Citation - 1993 U.S. Dist. LEXIS 21337    Page 4 of 11

Case 4:07-cv-01389-SBA    Document 63    Filed 06/05/2008    Page 39 of 45

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
*HN14* In evaluating the interests of justice for purposes of change of venue under 28
U.S.C.S. § 1404(a), courts typically examine four criteria: (1) judicial economy,
(2) the effect the transfer would have on the cost of the litigation to the parties,
(3) access to proof, and (4) the availability of compulsory process.

**COUNSEL:** For TEKNEKRON SOFTWARE SYSTEMS, INC., Plaintiff: Michael A. Jacobs,
Morrison & Foerster, San Francisco, CA.

For TEKNEKRON SOFTWARE SYSTEMS, INC., Plaintiff: Ronald Craig Fish, Falk Vestal & Fish,
San Jose, CA.

For TEKNEKRON SOFTWARE SYSTEMS, INC., Plaintiff: Robert Hardy Falk, Paul Dezenberg,
Falk Vestal & Fish, Dallas, TX.

For ISIS DISTRIBUTED SYSTEMS, INC., defendant: M. P. Thayer, Howard Rice Nemerovski
Canady Robertson Falk & Rabin, San Francisco, CA.

**JUDGES:** Spencer Williams, U.S. DISTRICT COURT JUDGE.

**OPINION BY:** Spencer Williams

**OPINION**

ORDER DENYING DEFENDANT ISIS' MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION; GRANTING DEFENDANT ISIS' MOTION TO TRANSFER TO THE NORTHERN
DISTRICT OF NEW YORK

Plaintiff Teknekron Software Systems, Inc. brought this action for patent infringement
against defendants Cornell University and Isis Distributed Systems, Inc. Defendant Isis
Systems now moves to dismiss the action for lack of personal jurisdiction, or, in the
alternative, to transfer it to the Northern District of New York. For the reasons
expressed **[*2]** below, Isis' motion to dismiss for lack of personal jurisdiction is DENIED and
its motion to transfer to the Northern District of New York is GRANTED.

BACKGROUND

Plaintiff Teknekron Software Systems, Inc. is a Palo Alto-based computer software developer.
In the late 1980s, the company developed a networking software package and on February
16, 1993, it was awarded United States Letters Patent Number 5,187,787 (the " '787
patent") for that product.

In the mid-1980s, the Computer Science Department at Cornell University developed the
"Isis Toolkit," a networking program which permits many computers to be linked together
and to exchange data simultaneously. The program contains a number of components or
"modules" which allow users to perform different networking functions. In accordance with
the federal grant that funded the development of the Isis Toolkit, the software was made
freely available to the public beginning in 1987, and it continues to be publicly available
today.

In 1988, defendant Isis Distributed Systems, Inc. was formed in Ithaca, New York to render
consulting advice to Isis software users. In the second half of 1991, Isis began to market an

enhanced version of the **[*3]** Isis Toolkit, a product called "Isis Distributed Toolkit," which it licensed primarily to users in the financial services industry on the East Coast. However, six of the licensees are in California, three of which are licensed to resell Isis' products or embed them in their own products.

Teknekron brought this action claiming that one of the modules in the Isis Distributed Toolkit infringes its '787 patent. In its answer, Isis claims that the module in question remains essentially unchanged from the public domain versions first released by Cornell in 1987. After Teknekron filed suit here, Isis brought an action for declaratory relief in the Northern District of New York, which has been stayed pending this Court's action on Isis' motions.

Isis now moves to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b), or, in the alternative, to transfer venue to the Northern District of New York, pursuant to 28 U.S.C. § 1404(a).

I. ISIS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A. Legal Standard

*HN1*Although Fed. R. Civ. P. 12(b)(2) governs a motion to dismiss for lack of personal jurisdiction, the Rule does not prescribe the procedure for **[*4]** resolving such a motion. Case law indicates that a court has two options: (1) it can decide the motion on the basis of the plaintiff's affidavits submitted in response to the motion, or (2) it can delay a decision pending further discovery and hold an evidentiary hearing. 5A Wright & Miller, *Federal Practice and Procedure: Civil* § 1351 at 253-56 & n.27.

No matter which procedure is used, the plaintiff has the burden of establishing the court's jurisdiction. However, if the court decides to rule on the basis of affidavits alone, plaintiff's burden is met with a simple prima facie showing of personal jurisdiction. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986).

*HN2*In diversity cases, a federal district court is bound by the personal jurisdiction statute of the state in which it sits. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). Beyond this, however, the court must ensure that its exercise of jurisdiction under that statute comports with the Constitution's due process requirements. *Id.*

In this case, California's long-arm statute extends jurisdiction to the very limits **[*5]** of constitutional due process (Cal. Civ. Proc. Code § 410.10), so this Court need only determine whether the exercise of jurisdiction would comport with due process. *See Haisten*, 784 F.2d at 1396.

*HN3*The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has had "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). "If the defendant's activities in the [forum] state are 'substantial' or 'continuous and systematic,' general jurisdiction may be asserted even if the cause of action is unrelated to those activities." *Haisten*, 784 F.2d at 1396. If the defendant's activities are not "substantial" or "continuous and systematic," the court may not exercise jurisdiction unless the following three criteria are met:

1. The nonresident purposefully directed his actions toward the forum state, or purposefully availed himself of the privilege of conducting activities in the **[*6]** forum state;

2. The claim arose out of or resulted from the defendant's forum-related activities; and

3. An exercise of jurisdiction would be reasonable.

*Haisten*, 784 F.2d at 1397. This latter type of jurisdiction is sometimes labeled *specific* jurisdiction, to distinguish it from the former, which is labeled *general* jurisdiction. R. Casad, *Jurisdiction in Civil Actions*, P 1.02[1] (1983); *see* Von Mehren & Trautman, "Jurisdiction to Adjudicate: A Suggested Analysis," 79 *Harv. L. Rev.* 1121 (1966). Teknekron concedes that this Court may not assert general jurisdiction over Isis, but the company argues that Isis is subject to this Court's jurisdiction based on the three-part test for specific jurisdiction.

B. Analysis

1. Purposeful Availment

*HN4*Purposeful availment requires "affirmative conduct which allows or promotes the transaction of business within the forum." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). A defendant can satisfy the purposeful availment standard either by taking "deliberate actions within the forum state or by creating continuing obligations to forum residents." *Hirsch v. Blue Cross, Blue Shield of Kansas*, 800 F.2d 1474, 1478 (9th Cir. 1986). **[*7]** However, *HN5*a defendant does not establish the minimum contacts sufficient for jurisdiction merely by entering a contract with a party in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985). Rather, the defendant's contacts with the forum state must be "substantial" and not merely "random, fortuitous or attenuated" - a determination which turns on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S. Ct. at 2185, 2186.

In this case, Isis entered licensing agreements with six California customers. Teknekron argues that these agreements constitute the minimum contact necessary for personal jurisdiction because they are in the nature of substantial, ongoing and reciprocal obligations between Isis and its licensees. This argument is based solely on certain provisions that comprise some of the agreements. For example, Teknekron notes that the licenses require Isis to service and maintain the software in California, Weil Decl., Exh. 3 at 7; Cooper Dep. at 109:8-10, to indemnify Isis' California **[*8]** licensees from suits arising from their use of the software, Weil Decl., Exh. 2 at 16, and to litigate disagreements in California. *Id.* at 18. In addition, the agreements give Isis royalty rights, *Id.* at 5-6, and the right to audit the books and records of a California licensee. Weil Decl., Exh. 4 at 8. Teknekron also maintains that the licensees who embed or resell Isis' software to other end users are, in effect, Isis distributors. According to Teknekron, these obligations, which Isis deliberately created with California residents, demonstrate that Isis has purposefully availed itself of the benefits and protection of California law.

Isis disagrees, arguing that the few licensing agreements at issue are precisely the sort of "random, fortuitous, and attenuated" activities that do not rise to the level of constitutionally sufficient "minimum contacts." In support of this claim, Isis contends that it has concentrated its marketing efforts on the New York City financial community, Cooper Decl. P 21, that the California agreements were unsolicited and insignificant, *Id.* at P 11, that all of the negotiations concerning the California contracts took place using long distance **[*9]** communication, *Id.*, that no Isis representative has ever visited California for purposes related to the software at issue, *Id.*, and that all of the performance under the agreements took place in New York. *Id.* at PP 8, 11. Isis further argues that Teknekron has overstated the nature of the reciprocal licensing terms, which, in Isis' opinion, require little or no action on

its part and are unlikely to be invoked. In Isis' opinion, the contact it had with California was the result of the unilateral activity of the California licensees and is not the type of contact that constitutes "purposeful availment."

Were the extent of Isis' contact with California limited to that initiated by its customers, there would be no purposeful availment. *See Gray & Co. v. Firstenberg Machinery Co, Inc.*, 913 F.2d 758, 760-61 (9th Cir. 1990) (no purposeful availment where contact initiated by forum resident and contract negotiated by telephone). However, this case is distinguishable from *Gray*, which involved a one time sale. Here, the licenses contemplate future consequences and continuing relationships between Isis and its licensees, Isis' argument as to the unlikelihood **[*10]** of its having to take future action notwithstanding.

Although the $^{HN6}$⁺continuing obligations at issue here are not as extensive as those arising out of the franchise agreement that was at issue in *Burger King*, they need not be to constitute purposeful availment. For example, in *Hirsch*, the Ninth Circuit considered whether an insurer which had agreed to provide worker's compensation insurance to a Kansas employer was subject to personal jurisdiction in California where one of the covered employees worked. Even though the insurer was unaware of the California employee at the time the contract was executed, the *Hirsch* Court held that the insurer was subject to personal jurisdiction in California, reasoning that the insurer had both knowingly and voluntarily entered the contract, which had contemplated out of state employees. *Id.*, 800 F.2d at 1480. That the insurer was physically absent from California and conducted none of the negotiations in California was held not to be determinative. *Id.* Here, Isis entered into *six* agreements with California customers and, unlike the insurer in *Hirsch*, knew the residence of the parties with which it was negotiating. **[*11]** It stretches the imagination to believe that Isis was a helpless bystander in these transactions and could not foresee that the agreements it entered would have effects in California. After all, it not only was bargaining with California customers but the agreements are clear that certain aspects of Isis' performance under the agreements would be rendered here. Thus, Isis' connection with California is such that it "should reasonably [have] anticipated being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

2. Arising Out Of

Isis argues that none of the California contacts upon which Teknekron predicates its complaint can be used as the basis for an infringement action because they all occurred before the Teknekron patent was issued. According to Isis, Teknekron can point to no acts of infringement occurring in the ten-day period between February 16, 1993, when the patent issued, and February 26, 1993, when Teknekron filed this suit.

In response, Teknekron argues that Isis' view of the relevant window for cognizable acts of infringement is too narrow. Teknekron does not stop there, **[*12]** however, contending that even if the Court accepts Isis' view, Isis negotiated a license agreement with Petrovision, Inc., a California company, within the ten-day window Isis claims is relevant. Weil Decl., Exh. 4 at 15. This one act is sufficient to satisfy the second prong of the test. In addition, by promising a license, ongoing technical support and indemnity from suit for patent infringement, Isis induced its licensees to infringe the '787 patent after it was issued.

Isis' reply is that Teknekron is ignoring a serious dilemma in its pleading. According to Isis, the dilemma stems from the fact that Teknekron is pursuing infringement claims against Cornell for the module it released to the public more than a year prior to the patent application and against Isis for its enhanced version of the module. Isis argues that all of the contacts on which Teknekron is basing its argument for limited jurisdiction are related to its infringement claim as to the Cornell module, which Isis claims is barred by 35 U.S.C. § 102 (b). Isis concludes that if Teknekron concedes that only the licensing and use of the Isis

module is relevant to this litigation, Teknekron can point **[*13]** to no Isis activity in California giving rise to its claim. Isis then launches into an eight page attack on the underlying merits of Teknekron's infringement claims.

In reality, however, Isis' entire reply on this issue is nothing more than a misplaced and poorly disguised argument for summary judgment, which is inappropriate here. At this stage, Teknekron *HN7*￼need only make a prima facie showing that jurisdiction is proper. *Fields*, 796 F.2d at 301. This Court is aware of no authority and Isis cites to none which would allow the Court at this stage to engage in an analysis of the legal and factual issues Isis raises.

Given its showing that Isis negotiated a license agreement with a California company and had license agreements in force when the '787 patent issued, Teknekron has satisfied the second prong of the test for limited jurisdiction.

3. Whether the Exercise of Jurisdiction Would be Reasonable

*HN8*￼In the Ninth Circuit, there are a number of factors that are relevant in determining whether the exercise of jurisdiction would be reasonable: (1) The extent of purposeful interjection into the forum state; (2) The burden on the defendant of defending in the forum; (3) **[*14]** The extent of conflict with the sovereignty of defendant's state; (4) The forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy; (6) The importance of the forum to plaintiff's interest in convenient and effective relief; (7) The existence of an alternative forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).

Isis argues that it never purposefully interjected itself into California affairs. However, the Ninth Circuit has held that once it is established that the defendant purposefully directed its efforts to the forum state, the District Court is to give the purposeful interjection factor no weight. *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). Therefore, because the Court has already concluded that Isis purposefully availed itself of the privilege of conducting business in California, this prong cannot be used to defeat jurisdiction here.

Isis further contends that California has no interest in Teknekron because Teknekron is a Nevada corporation. This argument has little merit. Teknekron is a California-based company with headquarters **[*15]** in Palo Alto. Many corporations are based in states outside of those where they are registered. In addition, California has an interest in protecting local companies against patent infringement regardless of where the infringement takes place.

This forum is also important to Teknekron's interest in convenient and effective relief; all of its records and witnesses are here as well as several Isis users. Siegler Decl. PP 8, 9.

Isis also maintains that since it is a company of limited size and resources, litigating in California would be extremely burdensome; having to do so would require it to retain the services of a California law firm in addition to its New York law firm and to incur the high costs of flying witnesses to trial here. Cooper Decl. PP 21, 22. Although Isis is a somewhat smaller company than Teknekron, minor size differences are not sufficient to justify a finding of lack of jurisdiction. *HN9*￼A defendant who has "purposely derived commercial benefit from his contacts in a state may not defeat jurisdiction there simply because of his adversary's greater net wealth." *Burger King*, 471 U.S. at 483 n.25, 105 S. Ct. at 2188.

In addition, Isis argues that the **[*16]** brunt of its allegedly wrongful conduct occurred in New York and since many of the witnesses are located there, the Northern District of New York will probably be a more efficient forum. *See Raffaele v. Compagnie Generale Maritime*, 707 F.2d 395, 399 (9th Cir. 1983). Isis further maintains that most of the physical evidence is in New York, Cooper Decl., PP 17, 18, and many of its New York witnesses are not within

this Court's subpoena power. *Id.*, PP 19, 20; Fed. R. Civ. P. 45(e). Isis also notes that Teknekron has a sales office in New York, *Id.* at P 23, which would reduce Teknekron's relative burden of litigating there.

The Northern District of New York does provide and alternative forum and, on the whole, is a more reasonable and efficient forum than this district. However, *HN10* it is not enough that the defendant demonstrate that some other forum is more reasonable than California, it must show a due process violation; it must show that jurisdiction in California would make the litigation "'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185. **[*17]** This it has not done. Requiring Isis to defend locally is not constitutionally unreasonable "in this era of fax machines and discount air travel." *Sher*, 911 F.2d at 1365. Isis has purposefully interjected itself into California, and the facts it alleges show no more than inconvenience, not a "severe disadvantage." Furthermore, it is more appropriate to resolve disputes about the inconvenience of a California trial through a motion for change of venue, rather than through dismissal for lack of jurisdiction." *Sher*, 911 F.2d at 1365, n.5, *citing Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185. This option will be discussed below.

Since the Court has concluded that Isis purposefully established contacts within California, Isis cannot defeat this Court's jurisdiction without a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185. Although Isis has valid arguments against this Court's exercise of jurisdiction, it has not demonstrated that jurisdiction would be so unreasonable as to violate due process.

Teknekron has satisfied **[*18]** the three-prong test for limited jurisdiction. Therefore, Isis' motion to dismiss for lack of personal jurisdiction is DENIED.

II. ISIS' MOTION TO TRANSFER VENUE

*HN11* Section 1404(a) of Title 28 of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that Teknekron could have filed this action in the Northern District of New York. See 28 U.S.C. § 1400(b). Thus, the Court need only consider the convenience and interest of justice factors.

*HN12* There are a number of considerations that go into the convenience calculus: (1) Teknekron's choice of forum; (2) relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the costs of securing witness attendance; (6) relative expense of trial; (7) location where the events at issue took place; (8) administrative difficulties and delay of forum court; and (9) local interest of controversy. *Skill-Craft Enterprises, Inc., v. Astro Mfg., Inc.*, 1990 U.S. Dist. LEXIS 18929, 18 U.S.P.Q.2D (BNA) 1555, 1558 (N.D. Ind. 1990). **[*19]**

*HN13* A plaintiff's choice of forum is accorded substantial weight in proceedings under section 1404(a). *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988), *citing Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir. 1970), *cert. denied*, 401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971). Thus, a transfer is not appropriate merely to shift the inconvenience from one party to another, *Harris Trust & Savings Bank v. SLT Warehouse, Co., Inc.*, 605 F. Supp. 225, 227 (N.D. Ill. 1985), and courts generally frown upon transfers unless the convenience and justice factors strongly favor venue elsewhere. *Decker Coal*, 805 F.2d at 843.

Isis makes the threshold argument that the Court should accord little deference to Teknekron's choice of forum because Teknekron's claims bear little relation to California. A

fundamental principle guiding section 1404(a) analysis is that litigation should proceed "in that place where the case finds its 'center of gravity.' *Levinson v. Regal Ware, Inc.*, 1989 U.S. Dist. LEXIS 17455, 14 U.S.P.Q.2D (BNA) 1064, 1065 n.3 (D.N.J. 1989) (citing cases). **[\*20]** This principle is particularly important in patent infringement suits. *See S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983). In this case, the allegedly infringing products were designed in Ithaca, New York. Cooper Decl. P 5. In addition, almost all of the allegedly infringing conduct took place in New York. *Id.* at PP 7, 21. Given these facts, the center of gravity for this action is in New York, not California. Consequently, Teknekron's choice of forum is only entitled to limited deference.

Even if the center of gravity were not in New York, the convenience factors and the interests of justice alone weigh in favor of transfer. For example, New York is Teknekron's largest market and Teknekron maintains a sales office in close proximity to the Northern District of New York, which is visited regularly by Teknekron officers and other personnel from here. Siegler Decl. P 8; Mohan Dep., 35-38, 70-71 76-78, 92-104. In contrast, Isis has no office or employee in California, Cooper Decl. P 21, and has few customers here in comparison to Teknekron's customer base in New York. Mohan Dep. 55, 57-59, 62-63, 70-71.

In addition, it would **[\*21]** be significantly more convenient for the witnesses if this action were transferred to New York. All of Isis' material witnesses, many of which are nonparties, are located in New York, along with most of the users of the Isis software package Isis intends to have testify. Teknekron, on the other hand, has identified only a handful of witnesses who will testify on its behalf, several of whom regularly travel to New York. Moreover, the merits of Teknekron's claims of infringement will focus on the defendants' design, development, manufacture, marketing and distribution of their software and almost all of the material events surrounding these activities took place in New York.

The interests of justice also weigh in favor of transfer. *HN14*In evaluating the interests of justice, courts typically examine four criteria: 1) judicial economy, 2) the effect the transfer would have on the cost of the litigation to the parties, 3) access to proof and 4) the availability of compulsory process. *Willemijn Houdstermaatschaapij v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1438 (D.Del. 1989). It is not clear that a transfer would promote judicial economy. While this Court has invested little **[\*22]** time and energy in the case, the same holds true for the Northern District of New York. In addition, neither party has presented evidence concerning the relative caseloads pending in each district. However, many of the nonparty witnesses are beyond the subpoena power of this Court, a problem which will be exacerbated by the dismissal of Cornell University. Although Isis could have those witnesses testify by deposition, federal courts strongly favor live testimony. *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). In addition, most of the documentary evidence with respect to Teknekron's infringement claims is located at Isis' offices in New York. All of these factors suggest that a transfer would reduce the overall cost of the litigation and promote the interests of justice.

For the foregoing reasons, Isis' motion to transfer under 28 U.S.C. § 1404(a) is GRANTED. The action shall be transferred to the District Court for the Northern District of New York. In accordance with Local Rule 205-4, this Order shall not become effective until ten days after it has been filed.

IT IS SO ORDERED.

DATED: **[\*23]** 6/14/93

Spencer Williams

U.S. DISTRICT COURT JUDGE