1   Mitchell F. Boomer (State Bar No. 121441)
2   Janine R. Hudson (State Bar No. 206671)
    JACKSON LEWIS LLP
3   199 Fremont Street, 10th Floor
    San Francisco, California 94105
4   Telephone: (415) 394-9400
    Facsimile: (415) 394-9401

5   Attorneys for Defendant
6   PFIZER, INC.

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  RANDALL J. SLOAN, an individual,          Case No. CV-08-1849 BZ

12              Plaintiff,                     **DECLARATION OF LYNNE
                                               BUONGIORNO IN SUPPORT OF
13      vs.                                    DEFENDANT PFIZER, INC.'S
                                               MOTION TO TRANSFER VENUE
14  PFIZER, INC., a Delaware corporation; and  [28 U.S.C. § 1404(a)]**
    DOES 1 through 40, inclusive,
15

16              Defendants.                    Date:
                                               Time: 10:00 a.m.
17                                             Ctrm.: G, 15th Floor
                                               MJ:   Hon. Bernard Zimmerman
18
                                               Complaint Filed:  12/11/2007
19                                             Case Removed to Federal Court: 4/7/2008

20  I, Lynne Buongiorno, hereby declare as follows:

21

22      1.      I am currently employed by Pfizer, Inc. ("Pfizer") as Associate Director,

23  Human Resources and work out of Pfizer's world headquarters in New York, New York.

24  I have been employed in this position since 2003.  I provide this declaration in support of

25  Pfizer's Motion to Transfer Venue.

26      2.      I have personal knowledge of the facts stated in this declaration regarding

27  Plaintiff Randall Sloan's employment because I have reviewed his personnel file

28  maintained by Pfizer and served as Mr. Sloan's Human Resources representative.  In

                                      1

1  addition, I directly communicated with Mr. Sloan regarding various employment matters

2  and investigated his harassment and retaliation complaints.  If called as a witness, I could

3  and would testify competently thereto under oath.

4        3.     In my capacity as Associate Director, Human Resources, I am familiar with

5  and could competently testify to Pfizer's anti-discrimination and anti-retaliation policies,

6  and related personnel policies and procedures.

7        4.     Pfizer is a research-based, global pharmaceutical company that develops,

8  manufactures, sells, and markets prescription medications for humans and animals.

9  Pfizer is incorporated in the State of Delaware with its world headquarters located in

10 New York, New York.

11       5.     On August 28, 2001, Pfizer's New York office sent Mr. Sloan's offer letter

12 to his residence in New York.  On August 31, 2001, Mr. Sloan accepted Pfizer's offer to

13 join the Company's Clinical Development department located in New York and work as

14 a Clinical Programs Associate under the direction of Helen Caridi.  A true and correct

15 copy of the executed offer letter is attached hereto as **Exhibit A.**

16       6.     On October 1, 2001, Mr. Sloan executed his employment agreement in

17 New York, accepting the terms and conditions of his employment with Pfizer's New

18 York office.  A true and correct copy of the executed employment agreement is attached

19 hereto as **Exhibit B.**

20       7.     Throughout his employment with Pfizer, Mr. Sloan worked out of Pfizer's

21 New York office.  In or about mid-September 2005, Mr. Sloan relocated himself to

22 California without prior approval or notice of his intent to do so.

23       8.     Mr. Sloan maintained his affiliation with the New York office after

24 unilaterally moving to California.  In February 2006, Mr. Sloan prepared an

25 administrative expense report identifying New York as the location of the Pfizer

26 department within which he worked.  A true and correct copy of Mr. Sloan's February

27 2006 expense report is attached hereto as **Exhibit C.**

28       9.     All decisions regarding Mr. Sloan's employment were made by his former

2

1    managers Helen Caridi, Donald Costello, Frank Caridi and James Crowe, all of whom

2    reside and/or work in the New York-Northern New Jersey metropolitan area.

3        10.    I have first-hand knowledge of Mr. Sloan's complaints against his former

4    managers for discrimination, retaliation and emotional distress. I conducted the internal

5    investigation of these claims. Virtually all the witnesses I interviewed during my

6    investigation work and reside in the New York-Northern New Jersey metropolitan area.

7        11.    All Mr. Sloan's wages, including those wages earned while working

8    temporarily in California, were classified as wages earned in New York and subject to

9    the appropriate local, New York state and federal withholdings.

10        12.    Dr. Agatha Nody, a Regional Medical Director in Pfizer's Occupational

11    Health and Wellness department, was responsible for evaluating Mr. Sloan's

12    accommodation requests. Dr. Nody works in the New York office.

13        13.    Nearly all of the health care providers who treated Mr. Sloan during his

14    employ with Pfizer, conducted independent examinations, and evaluated his medical

15    condition for purposes of disability benefits, medical leave and accommodation requests

16    are located in New York.

17        14.    On October 18, 2005, Mr. Sloan filed a workers' compensation claim with

18    the State of New York Workers' Compensation Board.

19        15.    The documents regarding Pfizer's anti-discrimination and retaliation

20    policies, procedures for evaluating work restrictions and accommodation requests,

21    Randall Sloan's employment and medical records, as well as any correspondence,

22    memoranda and other records maintained by Pfizer regarding its business decisions

23    relative to Mr. Sloan's employment and any benefits plans for which Mr. Sloan may have

24    been eligible are maintained in New York.

25        16.    The following are the names of individuals who I understand are potential

26    witnesses in this case. I have indicated the most current information available regarding

27    each individual's place of residence and employment status.

28            a.    Helen Caridi, Mr. Sloan's manager in the New York Clinical

3

1   Development department.  Ms. Caridi is no longer a Pfizer employee.  She resides in the

2   New York – Northern New Jersey metropolitan area.

3           b.    Donald Costello, Mr. Sloan's manager in the New York Bio-

4   Statistics Reporting group.  Mr. Costello is no longer a Pfizer employee.  He resides in the

5   New York – Northern New Jersey metropolitan area.

6           c.    Frank Caridi, Mr. Sloan's supervisor in the New York Bio-

7   Statistics Reporting group.  Mr. Caridi works in Pfizer's New York office.

8           d.    James Crowe, Mr. Sloan's supervisor in the New York Clinical

9   Programming and Writing group.  Mr. Crowe is no longer a Pfizer employee.  He resides

10  in the New York – Northern New Jersey metropolitan area.

11          e.    Dr. Agatha Nody, a Regional Medical Director in Pfizer's

12  Occupational Health and Wellness department, is responsible for implementing Pfizer

13  policies and procedures for evaluating work restrictions and accommodation requests.  Dr.

14  Nody works in the New York office.

15          f.    Various other Pfizer medical staff and health care providers who

16  evaluated Mr. Sloan's medical leave issues, temporary work restrictions and

17  accommodations requests are located in New York.

18

19      I declare under penalty of perjury under the laws of the United States of America

20  that the foregoing is true and correct.  Executed this _29_ day of May, 2008 at New

21  York, New York.

22

23                                    _Lynne Buongiorno_
                                     Lynne Buongiorno
24

25

26

27

28

4

# EXHIBIT A



Pfizer Inc
235 East 42nd Street
New York, NY 10017-5755

# Pfizer Pharmaceuticals Group

August 28, 2001

Randy Sloan
450 West 142nd Street #10
New York, NY 10031

Dear Randy:

Congratulations!

On behalf of Pfizer Inc, **Helen Caridi** and I are delighted to extend to you our offer to join the Company as **Clinical Programs Associate** within the **Clinical Development** department of Pfizer PPG. We look forward to having you join us as soon as possible.

You left a positive impression during your interviews, and your background and experience were impressive. We are confident that you will find Pfizer an interesting and stimulating environment, and one in which you will experience both challenge and opportunity to learn and develop.

In addition to our outstanding employment opportunities, Pfizer also offers an exceptional compensation and benefits program designed to ensure your well-being and financial security.

## Compensation
To confirm the essentials of the verbal offer made to you, your annual salary will be **$65,000.00**, payable monthly, **$5,416.66**.

## Benefits
Pfizer offers one of the finest benefits programs in the industry. These benefits currently include, but are not limited to, a flexible benefits program that provides you with the option to elect medical, dental, life, accidental death and dismemberment, and long-term care insurance for you and your eligible dependents. You also have the

**EXHIBIT A**

option to elect coverage for yourself under the long-term disability plan and can elect to participate in health care and dependent care pre-tax spending accounts. Under this program, Pfizer provides you with a generous benefits allowance so that you can purchase a tailored, comprehensive benefits package that meets the needs of you and your family.

Pfizer also offers a Savings and Investment Plan (401k) with generous matching contributions from Pfizer; a non-contributory retirement plan; and a number of other financial, educational and work/life balance programs.

We encourage you to review the enclosed *Benefits Highlights Booklet* which outlines the benefits available to you. Complete details and enrollment information will be included with your *New Employee Welcome Packet* which you will receive soon.

**Offer Contingencies**
In accordance with Pfizer policy, this employment offer is contingent upon successful completion of all aspects of Pfizer's pre-employment screening process. This process includes a satisfactory check of references, the verification of information you provide to us on the enclosed CARCO Background Verification form, as well as your successful completion of a pre-employment physical examination that will include a test for the presence of illegal drugs. Please understand that this offer may be withdrawn and/or that your employment may be terminated in the event you fail to successfully complete any of these elements, or any other aspect of the pre-employment process. **Please also understand that a start date cannot be determined until successful completion of these procedures**.

Please complete the attached CARCO *Background Verification Information* form if you have not done so already, and fax it to Amanda Silverman at 212-338-1659 and return the signed originals in the enclosed envelope.

For information on how to schedule your pre-employment physical and drug screen, please review the enclosed form.

As required by current U.S. immigration law, this offer is also contingent on your ability to document your authorization to work in the U.S. Enclosed is a copy of the I-9 Form which you will be asked to complete on your first day at Pfizer. Please review the form to familiarize yourself with the necessary documents you will need to bring with you on your first day. If you cannot provide these documents, please call me to discuss alternate documentation.

This letter, and its accompanying enclosures, sets out the complete terms of our offer to you and shall not be construed as a contract of employment for a fixed period of time. Your employment is at-will which means that you or Pfizer are free to end your employment at any time.

Please signify your acceptance of the terms and conditions of our offer by signing both copies of this letter in the signature space provided. Keep one copy for yourself and return the other to Amanda as soon as possible. A return envelope has been enclosed for your convenience.

Randy, we look forward to your joining us, and wish you a successful and rewarding career with Pfizer. Please feel free to call me at 212-733-5862 with any questions you may have.

Best regards,

Lindsey Colwell,
Manager, PPG Human Resources

Encs.
Application/Pre-employment Information form
Benefits Highlights
I-9 Form
Health Form

Accepted and agreed to this day of ___31 - Aug___ , 2001

_____
(Employee Signature)

# EXHIBIT B

PFIZER INC.

EMPLOYMENT AGREEMENT

AGREEMENT made and entered into as of the _17th_ day of _October_, 20_01_, by and between Pfizer Inc., a Delaware corporation, its subsidiaries and affiliates, with an office and a place of business at 235 East 42nd Street, New York, New York 10017 (hereinafter called "the Company") and _Anthony J. Sloan_ residing at _450 W 142nd St, #10 NY, NY 16031_

Recognizing that the success of the business of the Company, its divisions, and subsidiaries depends to a considerable extent on the protection of patents, inventions, discoveries and information held or used by the Company, and recognizing that during my employment I may contribute to or have access to such matters, I, in consideration of my employment or continued employment and the compensation and other benefits of my employment by the Company and intending to be legally bound, hereby agree as follows:

1.      During the course of my employment, I will acquire certain secret or confidential information, not previously known to me, and not known or used generally and I agree that, during my employment with the Company and thereafter, I will not, without the Company's written permission, disclose or use any such information (other than in the course of my employment with the Company).

2.      a.  I agree to disclose immediately and fully to the Company any idea, discovery, invention, improvement, software, writing or other material or design conceived, made or developed by me solely or jointly with others during the period of my employment with the Company during or after working hours, whether patentable or not that relates in any manner to the actual or anticipated business operations, work, investigations or research of the Company or its subsidiaries. I further agree that the entire right, title and interest in and to any such idea, discovery, invention, improvement, software, writing or other material or design shall belong to the Company; and that at the request of and without charge to the Company, but at the Company's expense, I will execute a written assignment of the same to the Company and will assign to the Company any application for letters patent or for trademark registration made thereon, and to any common-law or statutory copyright therein; and that I will do whatever may be necessary or desirable to enable the Company to secure any patent, trademark, copyright, or other property right therein in the United States and in any foreign country, and any division, renewal, continuation, or continuation in part thereof, or for any reissue of any patent issued thereon.

b.  In the event the Company is unable, after reasonable effort, and in any event after ten business days, to secure my signature on a written assignment to the Company of any application for letters patent or for trademark registration or to any common-law or statutory copyright or other property right therein, whether because of my physical or mental incapacity or for any other reason whatsoever, I irrevocably designate and appoint the General Counsel of the Company as my attorney-in-fact to act on my behalf to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of such letters patent, copyright or trademark.

c.  I also agree to record descriptions of all work in the manner directed by the Company and agree that all such records and copies, samples and experimental materials will be the exclusive property of the Company.

3.      I agree that I shall not disclose to the Company or induce the Company to use any secret or confidential information belonging to my former employers. Except as set forth below, I warrant that I am not bound by the terms of a confidentiality agreement or other agreement with a third party that would preclude or limit my right to disclose to the Company any ideas, inventions, discoveries, improvements or designs or other information that I may conceive as part of my employment with the Company. I agree to provide the Company with a copy of any and all agreements with a third party that preclude or limit my right to make disclosures.

4.      This Agreement may be assigned by the Company as part of the Company's entire business, or to a subsidiary or affiliate of the Company, or transferred by operation of law. I agree that if I am transferred to a subsidiary or affiliate of the Company, or from one such subsidiary or affiliate to another, all the terms and conditions of this Agreement shall continue with the same force and effect as if said Agreement had been made with such subsidiary or affiliate in the first instance.

**EXHIBIT B**

5.    I understand that this Agreement does not create a contract of employment or any other type of obligation on the part of the Company or any other person to employ me for any period of time. I also understand that I am an employee at will and am subject to termination at any time and for any reason. I further understand and agree that termination of this Agreement shall not affect the covenants and conditions herein contained. Upon my termination from the Company for any reason, I agree to return within 48 hours all Company materials within my possession, whether confidential or proprietary or that in any way relates to the business of the Company or any of its subsidiaries or affiliates.

6.    I agree that during the term of my employment, I shall not engage in any activity in competition with or against the best interests of the Company.

7.    I agree that any breach by me of this Agreement would cause irreparable harm to the Company and that in the event of such breach the Company shall have, in addition to all other remedies at law, the right to an injunction, specific performance and other equitable relief to prevent violations of my obligations hereunder.

8.    I agree that while employed by the Company, I will not be employed by or participate in the ownership, management or control, or otherwise be affiliated as a consultant, trustee, manager, partner, principal, officer, director, or independent contractor in any other business entity, or engage in any business which in any manner competes with the business of the Company as conducted during my employment, without the Company's prior written consent.

9.    I agree that upon termination from the Company, I will not solicit or entice away from the Company any business, customer and/or personnel or otherwise interfere with any person who is an employee, representative, agent or consultant of the Company, who is engaged by the Company, whether for compensation or otherwise.

10.    I agree that prior to accepting any new employment, I will inform a new employer of the existence of this Agreement and provide a copy to such new employer.

11.    I agree that I will not begin employment with another employer without notifying the Company. The Company reserves the right to request separate written assurances satisfactory to the Company from me and such new employer that I will not be required to use or disclose secret or confidential Company information as part of my new employment.

12.    If any provision or portion thereof contained in this Agreement is held to be unconstitutional, invalid or unenforceable, the remainder of this Agreement will be considered severable, shall not be affected, and shall remain in full force and effect.

13.    The validity, enforceability, construction and interpretation of this Agreement shall be governed by the internal laws of the state of New York, without reference to conflicts-of-law principles.

Attest:

_____
Assistant Secretary

In the presence of:

_____

PFIZER INC.

_____
Corporate Officer

_____
Employee

2

# EXHIBIT C

pfizer

# ADMINISTRATIVE EXPENSE REPORT
## FOR TRAVEL AND ENTERTAINMENT EXPENSES

NAME (PRINT OR TYPE)

PURPOSE OF TRIP — IF MORE THAN ONE PURPOSE, SHOW BY DAY

Lawson J. Slow
Remote Work Life

DEPT. NO. 514004
PAGE OF
DEPARTMENT NAME CPW
LOCATION 5521 7 8 3 8
SOCIAL SECURITY NO.
PERIOD COVERED BY REPORT

Robinson J. Slow: cell 917 488 2115

FOREIGN CONVENTION ☐ YES ☑ NO
WAS COMPANY AIRCRAFT USED? ☐ YES ☑ NO

CHECK IF UNUSED OR PARTIALLY USED COMPANY PAID TICKET IS ATTACHED

1. **COMPANY PAID EXPENSES**
   Last 3 digits of ticket # (one digit per box)

2a. **AIR, RAIL, BUS, TAXI**
   Report full fare plus any charges for porter, etc. (See Note 2a)

2b. **RENTAL AUTOMOBILE**
   Charged to you - not to the Company (See Note 2a)

2c. **PERSONAL AUTOMOBILE**
   No. miles driven per Day
   Amount @ Authorized cents per mile

2d. **TOLLS, PARKING, ETC.** (See Note 2d)

3. **HOTEL**
   Report room and tax. (See Note 3)

4. **YOUR OWN MEALS** (See Note 4)

5. **BUSINESS MEALS & ENTERTAINMENT**
   (Then pay by you or yourself and others.
   Explain all items on reverse side. (See Note 5)

   a. Telephone, Telegraph.
   b. Fax, etc.
   c. Cleaning & Laundry

6. **MISCELLANEOUS** (See Note 6)
   c. Other-Include any travel rebates received or personal travel paid by Pfizer. (Explain all items on reverse side.)
   d. Registration Fees - Charged to Expense Code 2139. (Explain on reverse side.)

LINE 7. **TOTAL EXPENSES BY DAY**

I hereby certify that I have incurred the expenses reported above on behalf of Pfizer Inc. or its subsidiaries. ALL REQUIRED ORIGINAL RECEIPTS ARE ATTACHED.

SIGNED BY EMPLOYEE

02-28-06

8. **ADVANCE REPORT FORWARD FROM YOUR LAST REPORT** — Line 14 last report
   Attach duplicate of cash advance slips

9. **NEW CASH ADVANCES**
   FROM CASH ADVANCE SLIP    LOCATION CODE    ADVANCE #    AMOUNT

10. **COMPANY PAID EXPENSES** Total of line 7

11. **TOTAL OF LINES 8, 9, 10**

12. **AMOUNT DUE EMPLOYEE** (if line 11 is greater than 7)

13. **AMOUNT DUE COMPANY** (if line 7 is greater than 11)

14. **ADVANCE CARRIED FORWARD TO NEXT REPORT**

15. **AMOUNT REFUNDED BY CASHIER** (Lines 13 + 14 or 14-12)

16. **AMOUNT PAID BACK TO CASHIER** (Lines 12-14)

**SUBMIT APPROVED EXPENSE REPORT TO CASHIER**

GROUP/DIVISION VERIFICATION
CHECKED BY

For Federal Income Tax purposes, expenses must be fully substantiated and approved by an authorized individual. Expenses must be approved by employee's immediate supervisor or by the next higher supervisor in the same reporting line with the necessary authorization. The approver's signature indicates that he/she has reviewed the report and accepts responsibility for its propriety.

APPROVED BY _____ DATE _____

RECEIVED PAYMENT — EMPLOYEE _____ DATE _____

FORM 6510-14 (FRONT) 1/99
16469 HD E

Receipts of $75.00 attached

MO. DAY 173 65 | 7 06 | 28 59 | 49 98 | 38 35 | 71 44 | TOTAL

**EXHIBIT C**