Mitchell F. Boomer (State Bar No. 121441)
Janine R. Hudson (State Bar No. 206671)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

Attorneys for Defendant
PFIZER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL J. SLOAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PFIZER, INC., a Delaware corporation; and DOES 1 through 40, inclusive,<br><br>Defendants. | Case No. CV-08-1849 SBA<br><br>**DECLARATION OF THOMAS R. KELLY IN SUPPORT OF PFIZER'S REPLY TO PLAINTIFF'S OPPOSITION TO PFIZER'S MOTION TO TRANSFER VENUE**<br><br>*[Reply Brief, Evidentiary Objections and [Proposed] Order filed concurrently herewith.]*<br><br>Date: July 29, 2008<br>Time: 1:00 p.m.<br>Ctrm.: 3, 3rd Floor<br>MJ: Hon. Saundra B. Armstrong<br><br>Case Removed to Federal Court: 4/7/2008 |

I, Thomas R. Kelly, hereby declare as follows:

1. I am currently employed by Pfizer, Inc. ("Pfizer") as Assistant General Counsel in Pfizer's Legal Department located at its world headquarters in New York, New York. I provide this declaration in support of Pfizer's Reply to Plaintiff's Opposition to Pfizer's Motion to Transfer Venue.

2. As a member of the Legal Department, I have reviewed Mr. Sloan's file

1

1  regarding his employment claims, which includes the February 2006 correspondence from
2  plaintiff's counsel Laurie S. Leonard of the New York based law firm Reavis Parent
3  Lehrer LLP regarding plaintiff's alleged discrimination and retaliation claims. A true and
4  correct copy of that letter is attached hereto as **Exhibit A**.
5     I declare under penalty of perjury under the laws of the United States of America
6  that the foregoing is true and correct. Executed this 15th day of July, 2008 at New
7  York, New York.

       _____
       Thomas R. Kelly

2

# EXHIBIT A

*Lynn Buongiorno*
*212-883-5388 (fax)*

# REAVIS PARENT LEHRER LLP

Sander Lehrer
Neil Patrick Parent
Helen D. Reavis

Robert Bryan Cole
Laurie S. Leonard+
Deena R. Merlen*

Counsel
Mark D. Bisgeier^
Jeffrey L. Blankstein
Kimberlee S. Bogen^
Jan Kleeman
Dara L. Onofrio
Nicole S. Page

41 Madison Avenue
41st Floor
New York, NY 10010
Telephone (212) 763-4100
Facsimile (212) 763-4141
www.rpl-law.com

Los Angeles
San Francisco

+ admitted in New York and Massachusetts
* admitted in New York and Connecticut
^ admitted in New York and California

## FACSIMILE TRANSMITTAL COVER SHEET

**TO:** Danielle Rosen, Esq.

**FROM:** Laurie S. Leonard

**CLIENT/MATTER:** 7953.01

**MESSAGE:**

Re: Randall J. Sloan

**FACSIMILE NO.:** 212-309-0570

**DATE:** February 24, 2006

**PAGES:** Cover + 4

IF YOU DO NOT RECEIVE ALL OF THE PAGES NOTED ABOVE, OR IF YOU HAVE DIFFICULTY WITH THE TRANSMISSION, PLEASE CALL (212) 763-4100.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY-CLIENT PRIVILEGED AND CONTAINS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE AND ITS ACCOMPANYING DOCUMENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE TELEPHONE OR FAX US IMMEDIATELY SO THAT WE MAY ARRANGE FOR RETURN OF THE DOCUMENTS AT NO COST TO YOU.

# REAVIS PARENT LEHRER LLP

Sander Lehrer
Neil Patrick Parent
Helen D. Reavis

Robert Bryan Cole
Laurie S. Leonard+
Deena R. Merlen*

Counsel
Mark D. Bisgeier▲
Jeffrey L. Blankstein
Kimberlee S. Bogen
Sandra E. Langs
Jan Kleeman
Dara L. Onofrio
Nicole S. Page

41 Madison Avenue
41st Floor
New York, NY 10010
Telephone (212) 763-4100
Facsimile (212) 763-4141
www.rpl-law.com

Los Angeles, California
San Francisco, California

+ admitted in New York and Massachusetts
* admitted in New York and Connecticut
▲ admitted in New York and California

February 24, 2006
Re: Randall J. Sloan

Danielle Rosen, Esq.
Pfizer Inc.
150 E. 42nd Street
2nd Floor
New York, NY 10017

Dear Ms. Rosen:

We represent Randall J. Sloan, an Associate in the Worldwide Development, Clinical Programming and Writing Group of Pfizer, Inc. ("Pfizer" or the "Company"). Mr. Sloan contends that Pfizer has discriminated against him based on his gender, sexual orientation (gay) and disability (depression), failed to accommodate his disability, and retaliated against him after he requested an accommodation and complained of discrimination. Due to Pfizer's actions, Mr. Sloan has suffered physical, emotional and financial distress, as well as damage to his career. Based on our preliminary discussions with Mr. Sloan, we set forth below a brief summary of the facts in this matter.

Background

Mr. Sloan came to Pfizer with a B.S. in Engineering after having provided services in the field of research-based social work. Mr. Sloan began his career at Pfizer in or about February 2000, when he began serving as a consultant to the Company in the Clinical and Scientific Affairs department. On or about October 1, 2001, Mr. Sloan was hired as a full-time Associate in the Clinical Development group, reporting to Helen Caridi, where he served as a Rapid Response Project Manager. After Mr. Sloan raised issues with Human Resources regarding Ms. Caridi, in or about February 2003, Pfizer transferred Mr. Sloan into the Bio-Statistics and Reporting Group, reporting directly to Donald Costello. Shortly after Mr. Sloan joined the Bio-Statistics and Reporting Group, Frank Caridi, Helen's husband, was assigned to oversee that group.

Danielle Rosen, Esq.
February 24, 2006
Page 2 of 4

### The Unfair Treatment Experienced By Mr. Sloan

During Mr. Sloan's tenure in the Bio-Statistics and Reporting Group, Mr. Costello, who managed a group of only heterosexual women (with the sole exception of Mr. Sloan), repeatedly denied promotional opportunities to Mr. Sloan that were provided to the heterosexual female employees he managed. For example, Mr. Costello awarded several promotions to Elizabeth Schick, from Associate to Medical Writer, while he failed to promote Mr. Sloan at all, despite his solid performance reviews. While similarly situated Pfizer employees outside of Mr. Costello's group received promotions, including Meghan Gatens and David Wilson, Mr. Sloan was not nominated for or promoted even once by Mr. Costello.

Mr. Costello also discriminated against Mr. Sloan in other respects. For example, Mr. Costello actively mentored and provided training opportunities to his heterosexual female employees, while Mr. Sloan was completely ignored and isolated. After experiencing this treatment from Mr. Costello, Mr. Sloan tried to seek other sources for mentoring and career advancement, including by meeting with Marcia Levenstein, Vice President of the New York Development Operation Group, to discuss Mr. Sloan's ideas for improving customer service. Upon learning of Mr. Sloan's meeting with Ms. Levenstein, however, Mr. Costello criticized Mr. Sloan for contacting Ms. Levenstein. (Likewise, after Mr. Caridi learned of Mr. Sloan's meeting with Ms. Levenstein, he personally warned Mr. Sloan that he needed to watch his "personality" and his "cultural norms" of behavior.)

In addition to icing out Mr. Sloan, Mr. Costello also demonstrated bias against homosexuals in other respects. In particular, on one occasion, when Mr. Sloan proposed that the group try to achieve its stated goal of recruiting, developing and retaining diverse colleagues, Mr. Costello told Mr. Sloan that he had "relatively little experience with gay and lesbian issues" and that the onus to accomplish such a goal was wholly on Mr. Sloan.

In or about May 2004, Mr. Sloan suffered from extreme anxiety as a result of the unfair treatment he was experiencing at work. As a result, Mr. Sloan met with his doctor, and was prescribed ongoing psychiatric medication to alleviate these symptoms.

Mr. Sloan repeatedly complained, both verbally and in writing, to Mr. Costello about the discrimination that he was experiencing. One such complaint is contained in Mr. Sloan's November 2004 professional self-assessment, in which he complained that he had been singled out and was not "operating on a level playing field." Neither Mr. Costello nor Mr. Caridi, however, did anything to stop or rectify this behavior. In or about February 2005, Mr. Sloan also complained verbally to Sherry Amos and Lynne Buongiorno of Human Resources, to no avail.

### Pfizer's Failure to Accommodate Mr. Sloan's Disability

After the repeated failure of Mr. Costello and Pfizer to put an end to this discriminatory treatment, Mr. Sloan continued to be anxious and depressed. This anxiety and depression intensified after Mr. Sloan was diagnosed with a serious life threatening illness (HIV),

after which he spiraled into severe depression and anxiety. In or about July 2005, Mr. Sloan asked Mr. Costello and Pfizer to accommodate his disability by allowing him to work from home. Both Mr. Sloan's primary care physician and psychiatrist submitted documentation to Pfizer in support of this requested accommodation. Mr. Costello, however, informed Mr. Sloan that he must continue to report to the New York office as usual, with no relief whatsoever, while his request for accommodation was reviewed. Mr. Costello, however, had previously permitted female heterosexuals who were not suffering from a disability to telecommute. In particular, Mr. Costello permitted Elizabeth Schick, who was not disabled, to telecommute from Iowa for six months immediately prior to her heterosexual wedding. Mr. Costello also told Mr. Sloan that the reason for the delay in approving Mr. Sloan's requested accommodation was that Pfizer did not want people with disabilities working for the Company, as it exposed Pfizer to liability.

Throughout July, August and September of 2005, Mr. Sloan awaited a response to his request for a reasonable accommodation. That response, however, never came. Instead, Pfizer insisted that it needed more information to evaluate Mr. Sloan's disability, and delayed the interactive process. As a result of Pfizer's repeated delays, Mr. Sloan's disability became more acute. In August 2005, he was diagnosed with Major Depressive Disorder--Severe and Generalized Anxiety Disorder ("GAD"). Due to the worsening of his disability, Mr. Sloan was forced to go out on short-term disability leave on or about September 19, 2005. Pfizer's own independent psychiatrist, Dr. Marvin Kaplan, M.D., confirmed after an evaluation of Mr. Sloan in early October 2005 that Mr. Sloan was disabled on a psychiatric basis. Dr. Kaplan recommended that Mr. Sloan be re-evaluated in six to eight weeks to see if he was still disabled.

Pfizer, however, failed to follow the recommendations of its own independent psychiatrist to re-evaluate Mr. Sloan's disability in six to eight weeks. Nor did the Company listen to the recommendations of Mr. Sloan's own psychiatrist, who in December 2005 informed Pfizer that Mr. Sloan had not yet experienced a sustained period of remission of his psychiatric symptoms, remained disabled, and required additional time out on short-term disability leave. Instead, after having conducted no evaluation of Mr. Sloan's medical condition, Pfizer in early December 2005 cut Mr. Sloan's disability leave short, and ordered him to return to work. Moreover, despite Mr. Sloan's complaints of discrimination, Pfizer forced him to continue to report to Don Costello. After being ordered to return to work, against his doctor's recommendation, Mr. Sloan immediately sent an email to Mr. Costello and Human Resources, once again complaining of discrimination and retaliation, as well as Pfizer's failure to accommodate his disability.

On or about December 19, 2005, approximately two weeks after he complained again about discrimination and retaliation to Mr. Costello and HR, Mr. Sloan was informed that the Company was eliminating his position in the second quarter of 2006.

On or about January 5, 2006, Mr. Sloan informed Pfizer that he was contacting legal counsel. Only one day later, Pfizer locked Mr. Sloan out of his email and network account. Shortly thereafter, Lynne Buongiorno of Pfizer HR informed Mr. Sloan that the Company had completed its investigation into his discrimination and retaliation complaints, and was unable to corroborate the concerns raised by Mr. Sloan.

Danielle Rosen, Esq.
February 24, 2006
Page 4 of 4

On January 30, 2006, Pfizer informed Mr. Sloan that his position was being eliminated in an accelerated fashion, effective at some point in the first quarter of 2006. We have learned, however, that Mr. Sloan's similarly situated co-worker, Toni Demes, has not been told when her layoff may occur.

On February 1, 2006, after receiving certain test results regarding Mr. Sloan's HIV condition, Mr. Sloan's physician recommended that he stop working immediately due to his medical condition, and begin a structured regiment of medications to prevent infections given the deteriorated state of Mr. Sloan's immune system. Mr. Sloan has applied for short-term disability leave based on this condition, but to date he has received no response from the Company.

The Effects of Discrimination and Retaliation

As a result of the discriminatory and retaliatory treatment he experienced, Mr. Sloan has suffered significant damages. He has suffered mental and emotional distress which requires medication, resulting in a loss of confidence at a time when he must now seek new employment. Mr. Sloan continues to be disabled by depression and anxiety without a sustained period of remission. With his impending termination, Mr. Sloan has suffered additional emotional distress at a time that he is fragile and struggling to return to physical and emotional health. Mr. Sloan has also had significant out-of-pocket expenses, including twice per-week sessions with his psychiatrist, costs associated with treatment, and now legal fees. As a result of these costs he has incurred, Mr. Sloan was informed in late December that he would soon lose his home due to foreclosure proceedings.

\* \* \*

After you have reviewed the above summary of facts, I urge you to contact me as soon as possible, as Mr. Sloan is very motivated to move forward.

Very truly yours,

Laurie S. Leonard

By Facsimile